## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>    ex rel.<br>INTERNATIONAL BROTHERHOOD OF<br>ELECTRICAL WORKERS, LOCAL UNION<br>NO. 98, | )<br>)<br>)<br>)<br>) | Civil Action No. 09-4230 |
| | ) | |
| Relator/Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE FARFIELD COMPANY | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OF LAW IN SUPPORT OF
### RELATOR/PLAINTIFF'S MOTION TO COMPEL DEFENDANT TO
### COOPERATE IN DISCOVERY PURSUANT TO Fed.R.Civ.P. 26.

Relator/Plaintiff, International Brotherhood of Electrical Workers Local Union No. 98

("IBEW"), by its legal counsel, files this Memorandum of Law in Support of its Motion to

Compel Defendants to Cooperate in Discovery.

## I.    FACTS AND PROCEDURAL HISTORY

On September 17, 2009, Plaintiff/Relator International Brotherhood of Electrical

Workers Local No. 98 ("IBEW") commenced this action against Defendant The Farfield

Company ("Farfield").  IBEW alleged that Farfield had violated the False Claims Act, 31 U.S.

§3729, *et seq.* ("FCA") in the manner in which it submitted bids and engaged in certain

employment practices, including the misclassification of its employees, on at least five (5)

federally funded projects between 2001 and 2009 in the Philadelphia region.

577582_2.doc
EL9800.29579

An Amended Complaint was filed on February 3, 2012.  By order issued by this Court dated September 23, 2013, a deadline for the issuance of written discovery requests on or before October 7, 2013 was established.   On October 7, 2013, IBEW issued its First Set of Interrogatories and First Request of Production of Documents to Farfield. (Exhibit 1 and 2, respectively, of IBEW's Motion to Compel Discovery.)

On November 22, 2013, Farfield provided written responses to the interrogatory requests. (Exhibit 3 of IBEW's Motion to Compel.)  On the same date, it provided objections and preliminary responses to the document request. (Exhibit 4 of IBEW's Motion to Compel.)  By agreement of the parties and authorization of the Court, Farfield submitted additional responses to the documents request in a series of batches over an extended period of time, as identified below:

- January 3, 2014 - 108,266 pages of documents

- January 6, 7, 10 and February 19, 2014 – 9,925 pages of documents

- April 21, 2015 – 92, 424 pages of documents

- June 12, 2015 – 34,227 pages of documents

- July 24, 2015 – 11,966 pages of documents

- September 18, 2015 – 1,858 pages of documents

- October 5, 2015 – 2,921 pages of documetns

After having had an opportunity to thoroughly review each of the 261,587 pages of documents submitted, IBEW determined that a number of deficiencies exist both with respect to the responses to document requests and Farfield's interrogatory responses. On August 17, 2015, counsel for IBEW issued correspondence to Farfield's counsel in which it identified with particularity the responses that it believed were altogether non-responsive to IBEW's requests, or

were substantially incomplete. (Exhibit 5 of IBEW's Motion to Compel.)[1]   On September 18, 2015, Farfield's counsel issued a written response to the assertions raised in IBEW's August 17th correspondence. (Exhibit 6 of IBEW's Motion to Compel.)

On October 2, 2015, the parties engaged in a telephone conference during which they discussed outstanding discovery matters.   Notwithstanding this good-faith attempt by the parties to reach agreement on all of the issues in dispute, a number of significant discovery disputes remain unresolved, as set forth below,

## II.    ARGUMENT

### A.    *IBEW's Discovery Requests are Reasonable, Highly Relevant, and Not Subject to Any Privilege*

Federal Rule of Civil Procedure 26(b)(1) defines the scope of discovery and allows "parties to obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Relevancy is to be broadly construed for discovery purposes and is not limited to the precise issues set out in the pleadings or to the merits of the case.  *See, American Health Systems, Inc. v. Liberty Health System*, 1991 WL 30726, *2 (E.D. Pa. 1991) *citing, Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978). Rather, discovery requests may be deemed relevant if there is any possibility that the information may be relevant to the general subject matter of the action. *American Health Systems, Inc.*, 1991 WL 30726, *2.

For the reasons provided below for each disputed discovery request, the information sought is clearly relevant (within the meaning of Rule 26) to the case before the Court, as the

---

[1]    Certain information in the exhibit has been redacted pursuant to the terms of the parties' Confidentiality Agreement.

3

information sought in IBEW's interrogatories and document requests is reasonably calculated to lead to the discovery of admissible evidence. More specifically, the information sought would reasonably lead to admissible evidence tending to prove the claims in this litigation: i.e., that by scheme and design, Farfield submitted false claims for payment to the U.S. government by paying its employees wages and/or benefits at rates below that required by the Davis Bacon Act, 40 U.S.C. § 276(a) ("DBA"), thus violating the False Claims Act, 31 U.S.C. § 3729, *et seq.* ("FCA"), on public works projects. Similarly, the discovery sought would lead to discovery of admissible evidence tending to disprove Farfield's various defenses, including for example affirmative defense no. 11 ("[n]o act or omission by Farfield was malicious, willful, wanton, reckless or made with intent to violate any statute or law,") and affirmative defense no. 19 ("Farfield never knowingly made, used or caused to be made or used, a false record or statement material to a false of [sic] fraudulent claim"). Answer, Docket Item No. 51.

### B.    *Farfield Has Not Met Its Burden In Objecting to the Discovery Requests*

Farfield has asserted a litany of general objections to IBEW's discovery requests. These objections include boilerplate assertions that the requests are "overbroad," the information sought is irrelevant, confidential, and that compliance with discovery requested would be "unduly burdensome." Farfield has provided virtually no reasoning as to why the requests are overbroad, why the information sought is irrelevant, or why compliance would be "unduly burdensome."

The party objecting to discovery has the burden of demonstrating why the discovery sought is not proper. This Court has explained that:

4

> [The responding party] objects generally to this interrogatory as "overly broad, burdensome, oppressive and irrelevant", a complaint which [it] echoes with virtually every other interrogatory. To voice a successful objection to an interrogatory, [the responding party] cannot simply intone this familiar litany. Rather, [it] must show specifically how, despite the broad and liberal construction afforded the federal discovery rules, each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive.

*Roesberg v. Johns-Manville Corp.*, 85 F.R.D. 292, 296 (E.D. Pa. 1980) (citing cases).

General or boilerplate objections are improper and have the legal effect of no response. "General objections without specific support may result in waiver of the objections," *Id.* at 297. Other courts have reached the same conclusion. "Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all." *Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999); accord *Adelman v. Boy Scouts of Am.*, 276 F.R.D. 681, 688 (S.D. Fla. 2011) ("[J]udges in this district typically condemn boilerplate objections as legally inadequate or meaningless."); accord *Ritacca v. Abbott Laboratories*, 203 F.R.D. 332, 335 n.4 (N.D.Ill. 2001) ("As courts have repeatedly pointed out, blanket objections are patently improper, . . . [and] we treat [the] general objections as if they were never made.").

As is apparent in the responses to the discovery requests noted below, Defendant has asserted panoply of improper general boilerplate objections – little, if any, having legal basis, and most of which contain no explanation whatsoever. The legal effect of these blanket objections is a nullity. Therefore, the Court should treat Farfield's objections as if it had not responded at all, and are thus waived. Accordingly, IBEW respectfully requests that this Court order Defendant to completely, fully, and accurately respond to the discovery requests.

Having taken on the arduous task of organizing over a quarter million pages of unorganized documents provided by Farfield, IBEW has outlined deficiencies in the following document and interrogatory requests and - despite that fact that it is Farfield's burden to

5

demonstrate the negative - the reasons why the information that has not been produced is relevant.

**C.** ***Farfield's Responses to IBEW's Request for Production of Documents Are Legally Inadequate***

The following are various categories of documents requested by IBEW, but not produced by Farfield. The categories correspond to one or more document requests noted below. Although it is Farfield's burden to demonstrate why IBEW's request is not proper, IBEW has provided reasoning why Farfield's failure to produce is legally unsupportable.

**1.** **Documents Identifying Employees and Former Employees and Contact Information (RPD 3.04)[2]**

IBEW seeks production of contact information for various Farfield employees (including Social Security numbers), so that IBEW may be able to further investigate and prosecute its case. This is necessary because many employees who worked for Farfield during the periods of time at issue in this action are no longer employed by Farfield, and thus, may not be easily located for interview and/or deposition. Farfield has suggested that it will produce current employees and will assist IBEW in locating former employees. IBEW should not be forced to inform Farfield of all aspects of its case investigation with respect to current or former employees, and has the right to conduct its investigation independently.

Farfield's counsel has taken the extreme position that "it is an inappropriate privacy violation for Farfield to produce Social Security numbers" for any current or former employee whatsoever. See Ex. 6, p. 3. Counsel has thus redacted all Social Security numbers in the documents produced. In taking its position, counsel for Defendant ignores the distinction

---

[2] "RPD" followed by a number refers to the Requests to Produce Documents attached to this motion as Exhibit 2.

between current and former employees.  Pennsylvania Rule of Professional Conduct 4.2 states,

"In representing a client, a lawyer shall not communicate about the subject of the representation

with a person the lawyer knows to be represented by another lawyer in the matter, unless the

lawyer has the consent of the other lawyer or is authorized to do so by law or a court order."

Comment 7 to this rule further clarifies the meaning of the rule in the context of an

organizational client:

> In the case of a represented organization, **this Rule prohibits communications with a constituent of the organization who <u>supervises, directs or regularly consults with</u> the organization's lawyer** concerning the matter **<u>or has authority to obligate the organization</u>** with respect to the matter **<u>or whose act or omission in connection with the matter may be imputed to the organization</u>** for purposes of civil or criminal liability. **Consent of the organization's lawyer is not required for communication with <u>a former constituent.</u>** If a constituent of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this Rule. Compare Rule 3.4(f). In communicating with a current or former constituent of an organization, a lawyer must not use methods of obtaining evidence that violate the legal rights of the organization. See Rule 4.4.

Pennsylvania Rule of Professional Conduct 4.2, cmt 7. (emphasis added).  Thus, Rule 4.2 makes

clear that former employees (both managerial and non-managerial) may be contacted without

informing Farfield's counsel.  Also, current employees who do not fall within the scope of the

litigation control group  - that is, those who supervise, direct, or regularly consult with Farfield's

counsel, have the authority to obligate Farfield in this matter, or those "whose act or omission in

connection with [this] matter may be imputed to" Farfield.  Finally, Counsel ignores the fact that

a confidentiality agreement was reached between IBEW and Farfield to deal with this situation.

Thus, Farfield should be ordered to respond to RPD 3.04 without redacting Social Security

numbers.

7

2. **Documents Relating to Projects Other than the Five "Identified Projects" (RPD 3.03-3.05, 3.10, 3.11, 3.13, 3.14, 3.16, 3.19, 3.21-3.23, 3.26, 3.27, 3.31, 3.32, 3.37, 3.38)**

Farfield's counsel has taken the position that any discovery related to projects other than the five "Identified Projects" (that is, the Girard Project, PATCO Project, Wayne Junction Project, Smart Station I Project, and Smart Station II Project which are directly at issue in this litigation) are irrelevant and do not warrant the need for any responsive documents to be provided.

Counsel for Defendant has taken far too narrow a view of discovery relevance.  Clearly discovery with respect to other projects is "reasonably calculated to lead to the discovery of admissible evidence" concerning violations of the False Claims Act on the Identified Projects because Farfield's policies and practice on other projects can be used as a comparison tool against its practices on the Identified Projects.  As an illustrative example, if Farfield classified a particular employee as a journeyman electrician on a project other than the Identified Projects, but then later classified that employee as a groundman or laborer on one of the Identified Projects, that comparison evidence would be "reasonably calculated to lead to the discovery of admissible evidence," showing Farfield's intent and design to intentionally misclassify its employees on an Identified Project in violation of the DBA and FCA.  Thus, Farfield should be ordered to produce full and complete responses to all requests without limiting its response to the Identified Projects.

3. **Documents Regarding Compensation and Work Performed**

Although Farfield has produced sizeable documents relating to employee classification, compensation and work performed, substantial gaps still exist with respect to these categories of documents.

    **i.**    **Certified Payroll (most notably RPD 3.37, as well as 3.03, 3.04, 3.10, 3.21, 3.27-3.30)**

Farfield has ostensibly produced most of the certified payroll with respect to the Five Identified Projects, thereby admitting that this class of documents is relevant. As argued in Part II.C.2, certified payroll is due on other projects as well. Additionally, various time gaps exist with respect to the Identified Projects certified payroll, as outlined in Exhibit A to this motion. Farfield should be ordered to produce full, complete, and unredacted Certified Payroll.

    **ii.**    **"Phase Code" Documents (most notably RPD 3.24, as well as 3.03, 3.04, 3.18, 3.19, 3.21-3.23, 3.26-3.30)**

Farfield has ostensibly produced most of the class of documents exemplified by Exhibit B to this motion ("Phase Code Timesheets") with respect to the Five Identified Projects, thereby admitting that this class of documents is relevant. As argued in Part II.C.2, Phase Code Timesheets are due on other projects as well. Additionally, various time gaps exist with respect to the Identified Projects Phase Code Timesheets, as outlined in Exhibit A to this motion. Farfield should be ordered to produce full, complete, and unredacted Phase Code Timesheets.

    **iii.**    **Foreman Daily Field Reports and Other Documents Recording Work Performed (most notably RPD 3.32 and 3.33, as well as 3.03, 3.04, 3.18, 3.19, 3.26, 3.30)**

Farfield has produced some daily foremen reports recording the work performed by Farfield employees on the Five Identified Projects, thereby admitting that this class of documents

is relevant.  As argued in Part II.C.2, daily foremen reports are due on other projects as well. Additionally, various time gaps exist with respect to the Identified Projects daily foremen reports, as outlined in Exhibit A to this motion.  Farfield should be ordered to produce full, complete and unredacted daily foremen reports, as well as any other document relating to work performed.

       **iv.**      **Pay Stubs (most notably RPD 3.27-3.29, as well as 3.03, 3.04, 3.18, 3.21)**

Farfield has produced very few employee pay stubs.  Farfield's counsel argued in a telephonic conversation with IBEW's counsel on October 2, 2015 that pay stubs are not relevant to the claims at issue in this litigation.  Again, Farfield is taking much too narrow a view of discovery relevance.  Clearly, pay stubs are "relevant" within the meaning of Rule 26, in that they would lead to the discovery of admissible evidence showing that in preparing its bid documents Farfield intended to and did, in fact, pay its employees wages and/or benefits at rates less than that mandated by the Davis Bacon Act, with the intent to defraud the United States Government, in violation of the False Claims Act.  Farfield should be ordered to produce full, complete and unredacted employee pay stubs relating to work performed on all projects.

       **v.**      **Documents Relating to Employee Benefit Formulas and Contributions Made (RPDs 3.03, 3.10, 3.11)**

Farfield has taken the remarkable position that documents relating to employee benefit contributions and benefit calculation methods are not relevant to this litigation.  Clearly, documents relating to benefits paid (or not paid) to employees are relevant to show that Farfield compensated its employees at rates less than that mandated by the Davis Bacon Act, with the intent to defraud the United States Government, in violation of the False Claims Act.  Farfield

should be ordered to produce full, complete and unredacted employee benefit documentation relating to work performed on all projects.

      **vi.    Other Documents Relating to Rate of Pay and Classification (most notably RPDs 3.21, 3.27-3.30, as well as RPDs 3.03, 3.04)**

Any other document not previously mentioned relating to wages, rates of pay, or classification is relevant to showing that Farfield violated the FCA by compensating its employees at rates below that mandated by the DBA. Farfield should be ordered to produce full, complete and unredacted documentation relating to pay rates and classification on all projects.

      **4.    Employee Personnel Files (RPD 3.36)**

Farfield maintains that it "fails to see the relevance of a request for all documents contained in the personnel files of all of its employees who worked on the Identified Projects." See Ex. 6, p. 14. Nonetheless, the request for an employee's personnel file is reasonably calculated to lead to the discovery of admissible evidence relating to an employee's classification, compensation, and changes thereof. An employee's personnel file would likely disclose the reasons why Farfield classified an employee a certain way, the employee's training and experience, as well as the reasons why it changed that employee's classification or compensation. This information could not be gleaned from reviewing the compensation documentation discussed in Part II.C.3 above. Thus, Farfield should be ordered to produce full, complete and unredacted employee personnel file documentation on all projects.

      **5.    Apprenticeship Program Documents (RPDs 3.38, 3.39)**

Farfield has produced only a small amount of documents relating to attendance at apprenticeship programs. For instance, Farfield produced a spreadsheet disclosing the date of last on-the-job training of its employees. The earliest date on this spreadsheet is July 2006. Yet,

the Contested Period in the discovery requests date back to January 1, 2001.  Counsel is aware that work on the Girard, PATCO, and Wayne Junction projects date back to 2001 and 2002. However, no similar record of apprenticeship attendance is provided for these years.  Discovery related to attendance at an approved apprenticeship program is highly relevant to the claims at issue in this litigation because such information would show whether Farfield properly classified certain employees as apprentices and thus whether it complied with its obligations under the Davis Bacon Act. Thus, Farfield should be ordered to produce full, complete and unredacted documentation disclosing its employees' attendance at apprenticeship programs.

### 6.   Communications Relating to Contract Bidding (RPD 3.16)

Farfield claims that it produced all of the responsive documentation on the Identified Projects.  Nonetheless, IBEW has been provided with scant communications concerning the bid process, other than the final submission to SEPTA.  Additionally, Farfield continues to refuse to produce documentation pursuant to this request for projects other than the Identified Projects. As outline in Part II.C.2, documents relating to bids on other projects are relevant for comparison purposes, for example to show that Farfield deviated from its bidding practices on other jobs and thus defrauded the United States Government in violation of the FCA when it submitted bids on the Identified Projects. Thus, Farfield should be ordered to produce full, complete and unredacted communications concerning contract bidding.

### 7.   Payroll Tax Submissions (RPD 3.05)

Farfield flatly refuses to produce any payroll tax submissions at all on the grounds that this request is irrelevant, overly broad, and unduly burdensome.  However, a simple inquiry with its accountant and/or recordkeeper should suffice to retrieve these documents.  Normal prudent tax and payroll practice requires that payroll records be maintained for at least four (4) years

after the due date of a tax filing.[3]   29 U.S.C. § 1027 requires that records to support employee benefit plan contributions and other benefit plan filings information must be maintained for at least six (6) years after filing IRS/DOL/PBGC Form 5500.   The required document retention periods cover much of the Contested Period at issue in this litigation, as the litigation was unsealed in 2011.   Aside from allegations of overbreadth or burden, payroll tax submissions are clearly relevant to this instant litigation because they would likely disclose tax deductions taken for employee wages and benefits paid.   Information verifying employee wages and benefits paid is obviously relevant to whether Farfield properly compensated its employees and thus complied with the requirements of the Davis Bacon Act. Thus, Farfield should be ordered to produce full, complete and unredacted payroll tax submissions for all its employees.

### D.      *Farfield's Responses to IBEW's Interrogatories Are Legally Inadequate*

#### 1.      *Farfield's Obligations in Responding to IBEW's Interrogatories*

Fed. R. Civ. P. 33 provides in relevant part that a party responding to interrogatories must answer each interrogatory, "separately and fully in writing under oath."  Fed. R. Civ. P. 33(b)(3).

This Court has highlighted the importance of a responding party's obligations:

> **Parties must provide true, explicit, responsive, complete, and candid answers to interrogatories**. *See* Fed.R.Civ.P. 33(b)(1) (party must answer each interrogatory "fully"). If a party is unable to supply the requested information, the party may not simply refuse to answer, but must state under oath that he is unable to provide the information and "set forth the efforts he used to obtain the information." *Milner v. National School of Health Tech.,* 73 F.R.D. 628, 632 (E.D.Pa.1977); 4A James W. Moore, *Moore's Federal Practice* ¶¶ 33.25, 33.26 (2d ed.1996). **It is axiomatic that the purpose of discovery is to make a trial "less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent possible,"** [citing cases], **as well as to narrow and clarify the issues in dispute**. *Hickman v. Taylor,* 329 U.S. 495, 501, 67 S.Ct. 385, 388, 91 L.Ed. 451 (1947).

---

[3]   See 26 U.S.C §6501; "How long should I keep records?" http://www.irs.gov/Businesses/Small-Businesses-&-Self-Employed/How-long-should-I-keep-records

*Hansel v. Shell Oil Corp.*, 169 F.R.D. 303, 305 (E.D. Pa. 1996). (emphasis added).

As is abundantly clear from Farfield's paltry responses, Farfield has not made serious effort to comply with its obligations under Rule 33.

### 2. *Farfield Failed to Identify Documents Utilized in Responding to Interrogatories*

One common theme in Farfield's Interrogatory responses was Farfield's utter refusal to specifically identify documents.  For example in interrogatory 3.13, Farfield was asked to "[i]dentify each and every Document that was used, relied upon or referred to by said Persons in preparing and/or submitting certified payrolls."  No response to this aspect of the interrogatory was given other than to "See [the nearly quarter million pages of] Documents."

However, courts have recognized the responding party's obligation to fully answer an interrogatory calling for the identification of specific documents.  See, e.g., *Smith v. Cafe Asia*, 256 F.R.D. 247, 255 (D.D.C. 2009) ("plaintiff requests defendant identify all documents on which it *relied* in support of the answer to that interrogatory. [citation to interrogatory omitted] Furthermore, this Court has stated that an interrogatory which requests the identification of documents relating to facts may be served on a party. *United States ex rel Pogue v. Diabetes Treatment Centers,* 235 F.R.D. 521, 524 (D.D.C.2006).").  See also *Roesberg v. Johns-Manville Corp.,* 85 F.R.D. 292, 300 (E.D. Pa. 1980) (interrogatory 25).

### 3. *The "See Documents" Response is Inadequate*

Another common theme in Farfield's Interrogatory responses is that when asked to identify and describe various aspects of its business, including its classification and compensation of its employees, Farfield responds simply by stating "see documents."  Mere

14

reference to a large mass of documents is no substitute for identification and description of the information requested.

Courts have regularly held that organizational clients (such as Farfield) have a duty to search for answers to interrogatories. *Int'l Ass'n of Machinists, Dist. 169 v. Amana Refrigeration, Inc.*, 90 F.R.D. 1, 2 (E.D. Tenn. 1978) ("[T]he answering agent must consult with other members of the organization who are in possession of the information sought to be discovered and then answer."); *Weddington v. Consol. Rail Corp.*, 101 F.R.D. 71, 75 (N.D. Ind. 1984) (a corporation must search for discoverable information from its employees). Responding parties such as Farfield have no right to shift their duty to search for answers onto the propounding party IBEW.

Rule 33(d) includes a narrow exception to the general duty to completely and fully respond to an interrogatory where the answer to the questions propounded may be readily ascertainable by reference to the responding party's business records:

> Option to Produce Business Records.
> If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:
>
> (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and
>
> (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

Fed. R. Civ. P. 33(d).

The records must be specified, "in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could."  The "See Documents" response does not direct IBEW to which documents in the nearly quarter-million pages contain the answer to the questions asked, much less how to interpret the documents, how the documents were prepared, the information relied upon to create the documents, or who created the documents.

The burden of "deriving or ascertaining the answer" will not be "substantially the same for either party" because many of the records are not self-explanatory, and Farfield has an infinitely greater knowledge of the inner-workings of its business than does IBEW.  Even with reference to a number of Farfield's documents, it is not possible for IBEW to ascertain the answer because Farfield is the only organization which understands the context of the documents, and how the documents were created.  IBEW cannot be expected to know the inner-workings of Farfield's executive decision-making and employment and payroll policies.

### 4.  *Specific Deficiencies in Interrogatory Responses*

The following is a recitation of each of IBEW's interrogatories propounded on Farfield on October 7, 2013, followed by Farfield's response on November 22, 2013, the noted deficiency in each response, and an explanation of why full and complete responses are legally required.

3.03    Identify all of Farfield's records covering the Contested Period that include information as to the work performed by Farfield Employees, the type of work, the dates and total number of hours worked by each Employee and Identify the Person or Persons responsible for maintaining such records.

> **Response:** *Farfield objects to this Interrogatory to the extent that it is vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Farfield will respond to this and subsequent Interrogatories only with respect to the Identified Projects, as that term is defined in IBEW's Interrogatories.*

16

*Subject to and without waiving these objections, Farfield responds that each department within the Company is responsible for maintaining its own records. Subject to and without waiving these objections, see also documents to be produced in response to IBEW's First Set of Document Requests.*

**Deficiency**: Althoough Farfield supplemented its initial response in its September 18th letter to identify the Superintendant, Contract Manager and Time Sheet Clerk on each of the "Identified Projects," Farfield response remains insufficient.

Identification and of records related to work performed, wages, hours, and persons responsible for maintenance of such records is clearly relevant to Plaintiff's claims because this information would tend to lead to admissible information showing that Farfield submitted falsified bids, misclassified its employees and paid them at rates below that required under the DBA, and thus, violated the FCA. This information is necessary in order to determine whether Farfield deviate from its ordinary practices with regard to the Identified Projects subject to litigation. This would be probative in determining whether misconduct occurred. Similarly, this information is relevant to disproving Farfield's defenses, such as affirmative defenses 11 and 19. Identification of persons responsible for recordkeeping is also relevant to verify Farfield's claims that certain information has been destroyed or cannot be located.

3.04   Identify the Person or Persons in the employ of Farfield or otherwise acting on its behalf who, during the Contested Period, are or were responsible for the preparation of payroll for Farfield's Employees and identify each and every Document used, relied upon or referred to by said Persons in such preparation.

*Response: Farfield objects to this Interrogatory to the extent that it is vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Farfield will respond to this and subsequent Interrogatories only with respect to the Identified Projects, as that term is defined in IBEW's Interrogatories. Subject to and without waiving these objections, Farfield responds as follows: On each Project, Farfield's Contract Manager, Superintendent, Foremen, and, in many cases, the employees themselves are responsible for providing information leading to the*

17

*preparation of payroll documents. Within Farfield's Payroll Department, Michelle Toburen, Becky Mossburg and Dave Fishel were responsible for inputting the information and preparing the payroll documents for Farfield's Employees on the Identified Projects. Subject to and without waiving these objections, see also documents to be produced in response to IBEW's First Set of Document Requests.*

**Deficiency**: As it had done in the prior response, in its letter of September 18th Farfield provided a supplemental response to this interrogatory in which it identified the Superintendant, Contract Manager and Time Sheet Clerk on each of the "Identified Projects." This response remains inadequate. Farfield fails to identify the persons responsible for the preparation of payroll and the individual(s) responsible and the documents relied upon.

Identification of those persons involved with payroll and identification of the documents relied upon in preparing payroll is relevant because this information would tend to lead to admissible information showing that Farfield submitted falsified bids, misclassified its employees and paid them at rates below that required under the DBA, and thus, violated the FCA. This information is necessary in order to determine whether Farfield deviate from its ordinary practices with regard to the Identified Projects subject to litigation. This would be probative in determining whether misconduct occurred. Similarly, this information is relevant to disproving Farfield's defenses, such as affirmative defenses 11 and 19.

3.05    Identify and describe for each of the Identified Projects:

(a) Each Employee who performed work on the project, his dates of employment, job classification(s) [if the Employee held more than one job classification, provide the dates and time frames during which he held each such classification], his rate(s) of pay for each job classification and the identity of his foreman or immediate superior;

*Response: Farfield objects to this Interrogatory to the extent that it is overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, see documents to be produced in response to IBEW's First Set of Document Requests.*

18

**Deficiency**: Farfield has failed to adequately respond to this interrogatory.  It has failed to identify any Employee who performed work on the project, his dates of employment, job classification(s), his rate(s) of pay for each job classification and the identity of his foreman or immediate superior

Identification of employees, their rates of pay, dates of work performed, classification, and the identify of his or her foreman and supervisor are all clearly relevant because this information would tend to lead to admissible information showing that Farfield submitted falsified bids, misclassified its employees and paid them at rates below that required under the DBA, and thus, violated the FCA.  This would be probative in determining whether misconduct occurred.  Similarly, this information is relevant to disproving Farfield's defenses, such as affirmative defenses 11 and 19.

> (b) Each Employee who possessed supervisory authority, including but not limited to foremen, supervisors, superintendents and job or project managers and  provide a description of each Persons' responsibilities; and
>
> ***Response:*** *Farfield objects to this Interrogatory to the extent that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, see documents to be produced in response to IBEW's First Set of Document Requests.*

**Deficiency**: Farfield has failed to adequately respond to this interrogatory.  It has not identified any supervisors.

Identification of supervisors, foremen, and the like are all clearly relevant because this information would tend to lead to admissible information, including witness testimony showing the Farfield misclassified its employees and paid them at rates below that required under the

DBA, and thus, violated the FCA.  Similarly, this information is relevant to disproving Farfield's

defenses, such as affirmative defenses 11 and 19.

> (c) Any and all Documents that refer or relate to the hours worked by employees on the identified projects, their rates of pay, their job duties or tasks, including daily time records or reports, foreman's' reports, supervisor reports or any form of similar document or record.

> *Response: Farfield objects to this Interrogatory to the extent that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Farfield further objects to this Interrogatory to the extent that it calls for the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, Rule 26(b)(3) of the Federal Rules of Civil Procedure or any other applicable privilege or immunity from disclosure. Subject to and without waiving these objections, see documents to be produced in response to IBEW's First Set of Document Requests.*

**Deficiency**: Farfield has failed to adequately respond to this interrogatory by identifying any of

the requested documents.

Farfield must do far more to identify the information requested than to merely state "see

documents."  The identification of documents relating to hours worked, wages paid and work

performed is clearly relevant to this litigation because it relates to liability and damages for

underpayment of wages and benefits.

Identification of documents referring or relating to wages and hours of employees,

including work tasks performed are all clearly relevant because this information would tend to

lead to admissible information showing that Farfield submitted falsified bids, misclassified its

employees and paid them at rates below that required under the DBA, and thus, violated the

FCA.  Similarly, this information is relevant to disproving Farfield's defenses, such as

affirmative defenses 11 and 19.

3.05    Identify and describe any and all Documents or reports that were prepared, maintained, submitted or recorded, of any kind or nature, that refer or relate to the performance of

work by Employees on a daily, weekly or other basis in relation to the Identified Projects. In addition, Identify and describe the process by which each Document or report that was identified is prepared or maintained, the reasons for creation of the Document, and the Person(s) who created the Document and to whom the Document was submitted.

***Response:*** *Farfield objects to this Interrogatory to the extent that it is vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Farfield further objects to this Interrogatory to the extent that it calls for the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, Rule 26(b)(3) of the Federal Rules of Civil Procedure or any other applicable privilege or immunity from disclosure. Subject to and without waiving these objections, see documents to be produced in response to IBEW's First Set of Document Requests.*

**Deficiency**: Farfield has failed to adequately respond to this interrogatory and has failed to identify and describe any Documents or reports that were prepared, maintained, submitted or recorded, of any kind or nature, that refer or relate to the performance of work by Employees on a daily, weekly or other basis in relation to the Identified Projects and similarly failed to identify and describe the process by which each Document or report that was identified is prepared or maintained, the reasons for creation of the Document, and the Person(s) who created the Document and to whom the Document was submitted..

The identification of documents relating to work performed is clearly relevant to this litigation because this information would tend to lead to admissible information showing that Farfield submitted falsified bids, misclassified its employees and paid them at rates below that required under the DBA, and thus, violated the FCA. Similarly, this information is relevant to disproving Farfield's defenses, such as affirmative defenses 11 and 19.

3.07    Identify and describe each Employee on each of the Identified Projects whose rate of pay was changed during the course of such project and, in relation to each, state:
    (a)     The employee's initial wage rate and job classification;
    (b)     The change(s) in the wage rate;
    (c)     The reasons(s) for the change;
    (d)     The amount of the change; and

(e)     The person who approved such change.

*Response: Farfield objects to this Interrogatory to the extent that it is vague, overly broad, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, see documents to be produced in response to IBEW's First Set of Document Requests.*

**Deficiency**: Farfield has failed to adequately respond to this interrogatory.  It has not identified a single employee, let alone the additional information requested with respect to each employee.

This response is wholly inadequate and effectively provides no information.  The interrogatory is a fundamentally different discovery device than a request to product documents. Farfield must do far more to identify the information requested than to merely state "see documents."  The identification of documents relating to changes in employee pay rates is clearly relevant to this litigation because it relates to liability and damages for underpayment of wages and benefits.  Similarly, the identification persons involved in the pay rate changes and reason for such change is relevant to identify witnesses and to determine whether Farfield misclassified its employees in violation of the DBA.

The identification and description of wage rates, changes in wage rates, and classification of employees, are all clearly relevant because this information would tend to lead to admissible information showing that Farfield submitted falsified bids, misclassified its employees and paid them at rates below that required under the DBA, and thus, violated the FCA.  Similarly, this information is relevant to disproving Farfield's defenses, such as affirmative defenses 11 and 19.


3.08    Identify the Person or Persons responsible for preparing the bid submissions and determining and approving the bid amounts for all projects during the Contested Period, including but not limited to the Identified Projects, and Identify each and every Document used, relied upon or referred to by said Persons in such preparation.  In

relation to each Person identified, Identify the project(s) for which each Person was
responsible.

> *Response: Farfield objects to this Interrogatory to the extent that it is overly broad,
> unduly burdensome and not reasonably calculated to lead to the discovery of admissible
> evidence. Farfield will respond to this and subsequent Interrogatories only with respect
> to the Identified Projects, as that term is defined in IBEW's Interrogatories. Subject to
> and without waiving these objections, Scott Anton and Edward Krzanowsky were
> responsible for preparing the bid submissions and determining and approving the bid
> amounts for each of the Identified Projects. Joseph McGee, Sr. also participated in the
> preparation of some of the bid submissions while employed at Farfield. Subject to and
> without waiving these objections, see also documents to be produced in response to
> IBEW's First Set of Document Requests.*

**Deficiency**: Farfield has only partially responded to this interrogatory. It has merely identified
the name of the persons responsible for preparing the bid submission. Section 2.19 of the
"Definitions" contained in Plaintiff's interrogatories indicates that the term "Identify," when
used in connection with a natural person, requires the responding party to provide: (a) Full legal
name and position; (b) title; (c) present or last known position and business affiliation; (d)
position and business affiliation at the time in question; and (e) present or last known address.
Farfield has complied only with sub-section (a). Moreover, Farfield failed to identify the
documents used or utilized for each project.

Identification of the persons involved in the bidding processes and identification of the
documents utilized in preparing bid submissions is relevant to the litigation because this
information would tend to lead to admissible information showing that Farfield submitted
falsified bids, misclassified its employees and paid them at rates below that required under the
DBA, and thus, violated the FCA. Identification of this information with respect to projects
other than the Identified Projects is relevant to proving whether Farfield deviated from its

practice on the Identified Projects.  Similarly, this information is relevant to disproving Farfield's defenses, such as affirmative defenses 11 and 19.

3.09   For the Identified Projects, Identify the Person or Persons responsible for determining the wage rates for each Employee and Identify each and every Document used, relied upon or referred to by said Persons in determining each Employee's wage rate.

> *Response: Farfield objects to this Interrogatory to the extent that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, the United States Department of Labor determined the wage rate for each classification for the Employees who performed work on the Identified Projects. Joseph McGee, Sr. was principally responsible for determining the job classifications of the employees on certain of the Identified Projects while he was employed by Farfield. After Joseph McGee, Sr. was no longer employed by Farfield, Edward Nescot and Robert Jackson were responsible for determining job classifications and rates of pay. John Kleimo also reviewed job classifications and rates of pay. All such determinations were based upon prevailing wage documents and classifications. Subject to and without waiving these objections, see also documents to be produced in response to IBEW's First Set of Document Requests.*

**Deficiency**: Farfield has only partially responded to this interrogatory.  It has merely identified the name of the persons responsible for determining wage rates.   Section 2.19 of the "Definitions" contained in Plaintiff's interrogatories indicates that the term "Identify," when used in connection with a natural person, requires the responding party to provide: (a) Full legal name and position; (b) title; (c) present or last known position and business affiliation; (d) position and business affiliation at the time in question; and (e) present or last known address. Farfield has complied only with sub-section (a).   Moreover, Farfield has failed to identify the documents used or relied upon by the individuals.

Finally, although Farfield did identify some persons involved in the wage determination process, it did not identify documents used, relied upon or referred to by the persons involved in the determination of wage rates.

Persons involved in the determination of employee wage rates and identification of the documents relied thereupon is relevant this information would tend to lead to admissible information showing that Farfield submitted falsified bids, misclassified its employees and paid them at rates below that required under the DBA, and thus, violated the FCA.  Similarly, this information is relevant to disproving Farfield's defenses, such as affirmative defenses 11 and 19.

3.10    For the Identified Projects, identify the Person or Persons responsible for determining the "phase code" assigned to work performed by each Employee and identify each and every Document used, relied upon or referred to by said Persons in making such a determination.

*Response: Farfield objects to this Interrogatory to the extent that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, Farfield's Project Superintendents were responsible for determining the "phase code" for the assigned work, based upon Farfield's job cost control system and the areas where the work was performed by each Employee. Subject to and without waiving these objections, see also documents to be produced in response to IBEW's First Set of Document Requests.*

**Deficiency**: Farfield did not respond to this interrogatory, except to state that "Project Superintendents" were involved and determined phase codes "based upon Farfield's job cost control system."   No specific persons were named and no specific documents were identified. Moreover, Farfield has failed to identify the documents used or relied upon by the individuals.

Persons involved in determining phase codes and the documents relied thereupon is relevant because this information would tend to lead to admissible information showing that Farfield submitted falsified bids, misclassified its employees and paid them at rates below that required under the DBA, and thus, violated the FCA.  Identification of this information with respect to projects other than the Identified Projects is relevant to proving whether Farfield deviated from its practice on the Identified Projects.  Similarly, this information is relevant to disproving Farfield's defenses, such as affirmative defenses 11 and 19.

25

3.13    For the Identified Projects, Identify the Person or Persons responsible for the preparation and/or submission of certified payrolls and Identify each and every Document that was used, relied upon or referred to by said Persons in preparing and/or submitting certified payrolls.

> *Response: Farfield objects to this Interrogatory to the extent that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, see Farfield's response to Interrogatory 3.04, above. Generally, Corinne Sheaffer signed the certified payrolls. Subject to and without waiving these objections, see also documents to be produced in response to IBEW's First Set of Document Requests.*

**Deficiency**: Farfield did not respond to this interrogatory, except to state that Corinne Sheaffer signed the certified payrolls. It did not provide a job title or positional information, or most notably an address for Ms. Sheaffer. Additionally, Farfield did not identify other persons involved in preparation of the certified payrolls prior to Sheaffer's signature. Farfield also refused to identify documents used, relied upon, or referred to in the preparation and submission process, except to state "see documents."

Persons involved in the preparation and submission of certified payroll and the documents relied thereupon is relevant because this information would tend to lead to admissible information showing that Farfield submitted falsified bids, misclassified its employees and paid them at rates below that required under the DBA, and thus, violated the FCA. Identification of this information with respect to projects other than the Identified Projects is relevant to proving whether Farfield deviated from its practice on the Identified Projects. Similarly, this information is relevant to disproving Farfield's defenses, such as affirmative defenses 11 and 19.

## III.    CONCLUSION

For the foregoing reasons, IBEW requests that Farfield be ordered to fully and completely respond to all outstanding discovery requests.   IBEW reserves the right to seek attorneys fees and costs associated with bringing this motion, under Fed. R. Civ. P. 37.


Respectfully Submitted,


BY: /s/ Richard B. Sigmond
   RICHARD B. SIGMOND (PA ID 02574)
   MARC L. GELMAN (PA ID 78857)
   JAMES E. GOODLEY (PA ID 315331)
   JENNINGS SIGMOND, P.C.
   510 Walnut Street, 16th Floor
   Philadelphia, PA  19106
   Tel. (215) 922-0623
   Fax (215) 922-3524
Date:  October 5, 2015    Attorneys for the Plaintiff


27