IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) <br> ex rel. ) <br> INTERNATIONAL BROTHERHOOD OF ) <br> ELECTRICAL WORKERS, LOCAL UNION ) <br> NO. 98, ) <br> ) <br> Relators/Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> THE FARFIELD COMPANY ) <br> ) <br> Defendant. ) | Civil Action No. 09-4230 |

### PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS
### DIRECTED TO THE FARFIELD COMPANY (FIRST SET)

Plaintiff asks that Defendant The Farfield Company produce for inspection and copying the documents identified in Section 3. Production shall be made in accordance with the time period provided by the Court as provided in its Order of August 1, 2013 and in accordance with Rule 34 of the Federal Rules of Civil Procedure.

### SECTION 1 -- INSTRUCTIONS

In responding to this request for production of documents, please follow these instructions.

1.01  **Response and Duty to Investigate**.  You must respond to this request for production of documents by producing the designated documents at the offices of Jennings Sigmond, P.C. You must produce all documents which are available to you or which may be discovered by you from your files, attorneys, agents and others subject to your direction, control or cajole. You must make a diligent investigation of all files and records available to you. You may mail or deliver copies of the designated documents before the due date instead of appearing with originals at the



scheduled time. Any request to change the time or place for production should be directed to the undersigned counsel. The original documents are to be produced as they are kept in the usual course of business and must be organized or labeled to correspond with paragraphs (and sub-paragraphs) in Section 3.

1.02   **Supplementary Response and Incomplete Answers.** This Request for Production of Documents is to be regarded as continuing past the date of your original response. If additional documents become available to you or any other person subject to your direction or control, you must produce them for inspection and copying (or deliver copies) within ten (10) days after receipt of the new documents. If you cannot find a document after exercising due diligence to secure it, identify the missing document in your response, state the reasons for its omission and identify any other possible sources or means of obtaining the document.

1.03   **Burdensome Production.** If you object to production of a document or category of documents on the ground that it is burdensome, please provide any summaries or easily accessible documents within the spirit of the request. Your response must include an objection to the requested production and explain the reasons for your objection.

1.04   **Claims of Privilege.** If you claim that a designated document is privileged, your response must include an objection and the reasons for the objection. It should: (1) identify the information or document subject to the claim of privilege with sufficient particularity to allow Plaintiffs to bring this matter before the Court; (2) state the nature of the privilege asserted; and (3) describe in detail the factual basis for the claim of privilege. In particular, if you claim the attorney-client privilege, identify the speaker or author of the communication, the capacity and situation in which the speaker or author was acting when he made the communication, all

2

recipients of a document or persons present at the making of the communication and the date of the communication.

1.05 **Construction.** This Request for Production of Documents shall be construed to secure the speedy and efficient discovery of pertinent material in accordance with the basic sense of each request and the dictates of common sense. The production of more than eight (8) square feet of documents is prohibited unless efforts to separate summaries from raw data are shown to be impracticable.

1.06 **Rules of Construction.** The following rules of construction apply to this Request for Production of Documents.

    (a)    The conjunction "and" is also to be interpreted disjunctively.

    (b)    The disjunctive "or "is also to be interpreted conjunctively.

    (c)    The present tense of a verb includes the past tense and *vice versa.*

    (d)    Use of the singular includes the plural and *vice versa.*

    (e)    Use of the masculine gender includes the feminine gender and *vice versa.*

    (f)    Use of any of the functional words "each," "every," "any" and "all" includes each of the other functional words.

    (g)    Use of any conjunction of the verb "to include" is illustrative and not limiting

1.07 **Relevant Time Frame.** All requests for documents, unless otherwise indicated, shall include documents created and/or referenced during the period January 1, 2001 to the present date.

## SECTION 2 – DEFINITIONS

2.01 "Act" shall mean any action or conduct.

2.02    "Answer" shall mean Defendant's Answer to the First Amended Complaint in this matter.

2.03    "Complaint" shall mean the First Amended Complaint in this matter.

2.04    "Communication" or "Communications" means all transmissions or exchange of information, which transmission or exchange was written or oral, electronic, telephonic, or by any other means, including but not limited to letters, e-mails, texts, telegrams, or other telegraphic messages, telephone conversations, face-to-face conversations, messages sent by way of intermediaries, notes, presentations or speeches, meetings, offers, notations, or memoranda of any conversations, bulletins, inter-office and intra-office Communications, and all other contacts or attempted contacts by or between Persons as this term is defined in herein, regarding any event, action taken or policy inquired into by these Interrogatories.

2.05    "Contested Period" shall mean January 1, 2001 to the date of your response to these document requests.

2.06    "Corporation" includes, without limitation, associations, joint-stock companies, insurance companies and any Foreign Business Organization with respect to holders of interests with limited liability for debts of the Organization.

2.07    "Document" or "Documents" means, and includes the original and any copy, regardless of origin or location, of any written, printed, computer-generated or typed record, graphic matter, e-mail transmissions without regard to storage media, however produced or reproduced, including but not limited to: contracts, agreements, addendums, schedules, telegrams, charts, letters, studies, checks, statements, receipts, summaries, pamphlets, books, business records, prospectuses, computer printouts, invoices, worksheets, printed matter, notes, memoranda, e-mails, reports, pdf files and/or folders, work papers, diaries, calendars, minutes of meetings, daily reports, whether printed or handwritten, and all other materials within or upon which

appear any writing or utterance, whether by hand, typewriter, printing press, tape, record, or any other mechanical or electronic system of reproduction. The terms specifically include any electronically stored information, including but not limited to, files or other data stored on hard-drives, "cloud" based storage systems, file servers, disks or other devices or medium. The terms also include copies containing information in addition to that contained on the original. You are also requested to identify and produce any document relating to matters described herein which are not in your possession, but are in the possession of your agents and representatives, including any actuarial service used by plaintiff and your counsel. As to any document related to the matters described herein which is not in your possession or the possession of your agents and representatives, but which you know to exist, you are requested to identify such document and indicate to the best of your ability its present or last known location or custodian.

2.08 "Employee" means:

    (a) Any officer of a corporation or former officer or employee with an ongoing consulting relationship or contract with the organization; and

    (b) Any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee.

2.09 "Employment" shall mean being carried on any of The Farfield Company's records as an Employee in active employment.

2.10 "Farfield" shall mean The Farfield Company and all of its affiliates, divisions, sub-divisions, partnerships, associations, organizations or joint ventures subject to its control.

2.11 "Girard Project" means the Girard Avenue Infrastructure Renewal Project.

2.12 "Identified Projects" shall collectively refer to "Girard Project," "PATCO Project," "Smart Stations I," "Smart Stations II" and "Wayne Junction Project."

2.13 "Local" or "Local 98" shall mean International Brotherhood of Electrical Workers Local Union No. 98.

2.14 "Officer" means the president, vice-president, general manager, treasurer, secretary and comptroller of a Corporation and any other person who performs duties corresponding to those normally performed by persons occupying such positions even though such person may no longer be serving in such capacity.

2.15 "Oral Communication" means any and all non-written forms of expression or communication, whether face-to-face, by telephone, in a conference or otherwise.

2.16 "Organization" means a sole proprietorship, partnership, trust, estate, corporation or business.

2.17 "Ownership" or any conjugation of the verb "to own" means actual ownership and constructive ownership, unless otherwise specifically indicated.

2.18 "Partnership" includes, without limitation, a syndicate, group, pool, joint venture, or other incorporated Organization through or by means of which any business, financial operation, or a venture is carried out which is not a trust, estate or Corporation, or sole proprietorship of Foreign Business Organization with respect to holders of interest with no general overall limitation of the liability for debts of the Organization.

2.19 "PATCO" shall mean the Port Authority Transit Company.

2.20 "PATCO Project" means the PATCO Egress Lighting Project."

2.21 "Person" or "Persons" means all individuals and entities, including without limitation natural persons, individuals, representatives of persons, associations, firms, companies, corporations, partnerships, limited partnerships, joint ventures, trusts, estates, public agencies, departments, divisions, subdivisions, subsidiaries, bureaus and boards.

2.22    "Property" means any tangible thing of value, including realty, personally, equipment, buildings, which is property for purposes of a tax lien under the Internal Revenue Code.

2.23    "Record" or "Records" shall include any regular, formal or non-formal, official or non-official, memorandum or written preservation of any event, actions taken and details thereof inquiring into in these Interrogatories. A copy of the original of the "Record" is preferred; giving the substance of such "Records" will suffice where a copy is not available.

2.24    The terms "relating to", "relate to", "evidence", "referring to", "refer to" and "regarding" mean constituting, comprising, containing, setting forth, showing, disclosing, describing, explaining, summarizing or concerning directly or indirectly. Further, the term "relate to" or "relates to" means to support or provide a factual basis for, to contradict, to concern, or to refer to in any or degree, or to any extent.

2.25    "SEPTA" shall mean Southeastern Pennsylvania Transportation Authority.

2.26    "Smart Stations I" means the SEPTA Project 5005, Smart Stations Project I.

2.27    "Smart Stations II" means the SEPTA Project 5005, Smart Stations Project II.

2.28    "Summary" means a memorandum, report, record or data compilation, in any form, prepared or used by the management of the company or an accountant, attorney, actuary or other advisor in the usual course of business or any other chart, summary or calculation presenting the contents of voluminous or numerous documents or data entries in a form which may conveniently be examined in court.

2.29    "Wayne Junction Project" means the SEPTA Project 5004, Wayne Junction to Glenside Signal Project.

2.30    "You" or "Your" and "defendants" mean the party to whom these Interrogatories are directed and includes any agent, employee, representative, or other natural person, firm,

7

corporation, partnership, association, organization, joint venture or group of natural persons subject to its control.

2.31    The rules of construction and definition of terms in the Interrogatories (First Set) also apply to this request for production of documents.

## SECTION 3 - REQUEST FOR DOCUMENTS

3.01    Copies of any and all documents that are identified and/or described in your response to interrogatory numbers 3.01 through 3.19 in this case.

3.02    All Documents identified in Farfield's Initial Disclosures pursuant to Rule 26(a).

3.03    All Documents that identify Persons and business entities employed by Farfield either as direct Employees or subcontractors on any job or project wherever located during the Contested Period.

3.04    Any and all payroll ledgers, earnings reports, personnel records and other Documents for all Employees of Farfield which delineate the Employee's name, social security number, job classification, work location, hours worked, rate of pay, gross pay, and payroll deductions from each week during the Contested Period.

3.05    All payroll tax submissions (with all addendums, attachments or amendments) submitted by Farfield during the Contested Period above to any municipal, state and/or federal taxing authority.

3.06    Documents that reflect the identity of all corporate officers of Farfield during each year of the Contested Period.

3.07    Any and all documents that reflect, refer or relate to Farfield's policy regarding the use of cellular telephone or personal computers by Employees and corporate officers to conduct

8

Farfield business, communicate with other Employees or corporate officers, or store Documents referring or relating to Farfield business.

3.08 Any financial statements, whether audited or unaudited, issued by or on behalf of Farfield during the Contested Period.

3.09 Any and all Documents that refer or relate to any investigations of Farfield conducted by the U.S. Department of Labor or any other local, state or Federal agency during the Contested Period.

3.10 Any and all Documents evidencing, relating to or referring to payments or contributions for fringe benefits (including but not limited to pension benefits, health and welfare benefits, 401(k) contributions) made on behalf of Employees of Farfield during the Contested Period.

3.11 Any and all remittance forms, correspondence or other Documents which Farfield forwarded to or received from any employee benefit plan during the Contested Period.

3.12 Any Wage Determinations issued by the U.S. Department of Labor referring or related to the Identified Projects.

3.13 All construction contracts or other agreements between Farfield and any Person, corporation, partnership or other form of business entity which evidence, refer or relate to work performed (or to be performed) by Farfield during the Contested Period, including but not limited to, work performed on the Identified Projects.

3.14 All bid documents submitted by Farfield during the Contested Period, including, but not limited to bids submitted for the Identified Projects.

3.15 All Documents referring or relating to the bid documents identified in request number 3.14 or utilized or considered by Farfield in preparing the bid documents.

3.16 Any and all Documents that reflect, refer or relate to communication among any Farfield

9

executive officers or any Employee(s) who would have participated in the bidding process concerning the preparation of bid submissions and the determination of bid amounts during the Contested Period.

3.17 Any and all Documents that reflect, refer or relate to communication among any Farfield executive officers or any Employee(s) who would have participated in the bidding process concerning the preparation of bid submissions and the determination of bid amounts for the Identified Projects.

3.18 All internal reports generated by Farfield in connection with work performed on the Identified Projects.

3.19 All daily time sheets or other type of work report(s) covering the Identified Projects that show for each Employee the nature of the work being performed on a daily or weekly basis.

3.20 All daily time sheets or other type of work report(s) covering the Contested Period that show for each Employee the nature of the work being performed on a daily or weekly basis.

3.21 All documents containing information about job titles or job classifications of Employees of Farfield in the Contested Period including, but not limited to, Employees working on the Identified Projects.

3.22 All documents that identify the work performed by Employees, the location of the work and a description of the work performed, including but not limited to foreman's reports and foreman's logs, during the Contested Period.

3.23 All documents that identify the work performed by Employees, the location of the work and a description of the work performed, including but not limited to foreman's reports and foreman's logs for Identified Projects.

3.24 All documents containing a phase code assigned to Employees for the Identified Projects.

10

3.25    All e-mails and internal memoranda referring or relating to the Identified Projects.

3.26    All documents identifying projects on which Farfield performed any services or to which Farfield delivered any materials in the Contested Period, including documents that will identify the name of each project, its location, the date(s) the work was performed or materials delivered, and the identity of Farfield's Employees who performed the services.

3.27    Any and all documents setting forth, evidencing, relating to or referring to the rate of pay received by each of Farfield's Employees during the Contested Period.

3.28    Any and all documents setting forth, evidencing, relating to or referring to the rate of pay received by each of Farfield's Employees for Identified Projects.

3.29    Any and all documents that refer or relate to the wage rates of Employees performing work on the Identified Projects.

3.30    Any and all documents that refer or relate to the classification of Employees performing work on the Identified Projects.

3.31    All contracts, subcontracts or other agreements between Farfield and any Person, Corporation, partnership or Organization which evidence, refer or relate to work performed (or to be performed) by Farfield during the Contested Period.

3.32    To the extent not covered by any other request, all contracts between SEPTA and Farfield covering work performed during the Contested Period.

3.33    To the extent not covered by any other request, all contracts between PATCO and Farfield covering work performed during the Contested Period.

3.34    All contracts between PATCO and Farfield concerning the Identified Projects.

3.35    All contracts between SEPTA and Farfield concerning the Identified Projects.

11

3.36    All employment or personnel files and other employment-related documents for Employees who worked on the Identified Projects.

3.37    All certified payrolls prepared by or on behalf of Farfield on any project during the Contested Period, including, but not limited to, the Identified Projects.

3.38    Any and all Documents relating or referring to the attendance at any electrical apprenticeship program by any Employee who performed work during the Contested Period.

3.39    Any and all Documents relating or referring to the attendance at any electrical apprenticeship program by any Employee who performed work on the Identified Projects.

3.40    Any and all documents evidencing the type of internal or interoffice electronic mail system(s) utilized by Farfield during the Contested Period (including the software program or programs utilized by Farfield for electronic mail, service provider or providers used -such as America Online - if applicable, and computer hardware utilized).

3.41    Any and all documents setting forth or related to Farfield's document retention policies (including retention policies applicable to electronic mail and other computerized documents).

3.42    Any and all documents setting forth or related to Farfield's document destruction policies (including retention destruction policies applicable to electronic mail and other computerized documents).

3.43    All documents with reference to or written policies, procedures and guidelines related to Defendant's computers, computer systems, electronic data and electronic media including, but not limited to, the following:

    a.    Backup tape rotation schedules;

    b.    Electronic data retention, preservation and destruction schedules;

       c.      Employee usage policies for company computers, telephones, and other technology;

       d.      Company-wide monitoring software;

       e.      File naming conventions and standards;

       f.      Password, encryption, and other security protocols;

       g.      Diskette, CD, DVD, and other removable media labeling standards;

       h.      Email storage conventions (e.g., limitations on mailbox sizes/storage locations; schedule and logs for storage);

       i.      Help features or documentation;

       j.      Electronic media deployment, allocation, and maintenance procedures for new employees, current employees, or departed employees;

       k.      Software and hardware upgrades (including patches) during the Contested Period (including who and what organization conducted such upgrades); and

       l.      Personal or home computer usage policies for work-related activities.

3.44    A complete copy of Farfield's Articles of Incorporation.

3.45    A complete copy of Farfield's Certificate of Incorporation.

3.46    Complete copies of the following corporate documents of Farfield:

       (a) By-laws as amended;

       (b) complete minute books;

       (c) complete stock books including stock transfer ledger;

       (d) a list of all shareholders;

       (e) a list of all directors and officers serving at present;

       (f) shareholders' agreements;

      (g) a list of jurisdictions in which corporation has qualified to do business, has filed tax returns in the last five years and in which the corporation does business;

      (h) year-end financial statements for the last three years;

      (i) auditors' work papers;

      (j) all interim statements since last year-end adjustment;

      (k) summary of timing differences between books and tax returns with reconciliation between provision for income taxes and income taxes actually paid.

      (l) complete copies of all corporate minutes of Board of Directors' meetings.

3.47    Complete copies of any and all insurance policies and related documents (including declaration sheets) which cover (or may cover) the claim(s) made by Plaintiff (including excess or umbrella policies).

3.48    Complete copies of any and all documents indicating whether any insurer is defending the instant case pursuant to a reservation of rights.

3.49    Complete copies of any and all documents indicating whether any insurer has refused to defend or indemnify Defendant in the instant case and the reasons for such decision.

3.50    Any statements prepared in connection with this litigation.

 

                                            JENNINGS SIGMOND, P.C.

                                            <u>/s/ Richard B. Sigmond</u>
                                            RICHARD B. SIGMOND, ESQUIRE
                                            (I.D.#02574)
                                            MARC L. GELMAN, ESQUIRE
                                            (I.D.#78857)
                                            MOIRA McGUIRE KULIK, ESQUIRE
                                            (I.D.# 202879)

<u>October 7, 2013</u>                       510 Walnut Street, 16th Fl.
DATE                                    Philadelphia, PA 19106-3683
                                            (215) 922-6700