IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. : | |
| INTERNATIONAL BROTHERHOOD       : | |
| OF ELECTRICAL WORKERS,          : | CIVIL ACTION |
| LOCAL UNION NO. 98,             : | |
|     Plaintiffs,       : | |
|                            : | No. 09-4230 |
|    v.                       : | |
|                            : | |
| THE FARFIELD COMPANY,           : | |
|     Defendant.          : | |

**M E M O R A N D U M**

**STENGEL, C.J.**                                                                 September 26, 2017

      This case involves a claimed violation of the False Claims Act ("FCA"), 31 U.S.C.§3729 *et seq.*,[1] where the defendant allegedly underpaid its employees with reckless disregard for its statutory compliance under the Davis-Bacon Act ("DBA"), 40

---

[1] The FCA provides:

> (a) Liability for certain acts … any person who --
> (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;
> (2) knowingly makes, uses or causes to be made or used, a false record or statement to get a false claim or fraudulent claim paid or approved by the Government;
> (3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid; …
> (7) knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government, … is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus three times the amount of damages which the Government sustains because of the act of that person . . . .

31 U.S.C. § 3729.

U.S.C. §267(a) *et seq.*[2] The plaintiff alleges that defendant, The Farfield Company ("Fairfield"), submitted false certified payrolls and Certificates of Compliance in order to intentionally and knowingly misclassify workers performing electrician's work at classifications with a lower rate of pay on prevailing wage jobs. Amend. Compl. at ¶¶ 1-2. Stated differently, plaintiff alleges that employees performing electrician's work were intentionally classified as laborers, groundsmen, and other classifications with lower pay rates regardless of their qualifications or the actual work performed. Id. at ¶ 5. This scheme allowed Farfield to gain a bidding advantage over its competitors by manipulating rates of pay on federally funded public work projects. Id. at ¶ 3.

---

[2] The DBA is a protective labor law that, among other things, requires certain federal government contracts "for construction, alteration, and/or repair . . . of public buildings or public works of the United States" to contain a provision "stating the minimum wages to be paid various classes of laborers and mechanics." United States ex rel. Windsor v. Dyncorp, Inc., 895 F. Supp. 844, 848-49 (E.D. Va. 1995) (citing Davis-Bacon Act, 40 U.S.C. § 276(a)). If the contracting government agency determines that the contract is subject to the Act's provisions, then the agency "must determine the appropriate minimum wage for each of the various classes of mechanics and laborers predicted to be needed for the contract." Id.; Universities Research Ass'n v. Coutu, 450 U.S. 754, 760 (1981); 29 C.F.R. § 5.5. "Those minimum wages must be based upon wage rates determined by the Secretary of Labor, 40 U.S.C. § 276a, and 'the correctness of the Secretary's wage rate determination is not subject to judicial review.'" Dyncorp, Inc., 895 F. Supp. at 848-49 (citing Coutu, 450 U.S. at 761 n.10). The determination of minimum wages is subsequently included in the request for contract bids, reviewed, and ultimately incorporated into the contract. Id.

The Department of Labor regulations also require the contractor to maintain and submit payroll records containing "the name, address, and social security number of each [] worker, his or her correct classification, hourly rates of wages paid . . ., daily and weekly number of hours worked, deductions made and actual wages paid." Dyncorp, Inc., 895 F. Supp. at 849 (citing 29 C.F.R. § 5.5(a)(3)(i)). The contractor must then submit copies of these payroll records, 29 C.F.R. § 5.5(a)(3)(ii)(A), and a statement certifying that the payroll information is correct and complete and that the workers have been paid "not less than the applicable wage rates . . . for the classification of work performed." Id. (citing 29 C.F.R. § 5.5(a)(3)(ii)(B)). Regulations further provide that falsification of the certifications may subject the contractor to liability under the FCA. Id.; 29 C.F.R. § 5.5(a)(3)(ii)(D).

I.      BACKGROUND

Relator/plaintiff International Brotherhood of Electrical Workers, Local Union No. 98 ("Local 98"), on behalf of the United States of America, alleges that defendant Farfield's intentional and methodological misclassification of workers violated the DBA and the FCA in the defendant's contract with Southeastern Pennsylvania Transportation Authority ("SEPTA").

Farfield is an electrical contractor that performed work on at least five (5) federally funded projects between 2001 and 2009 in the Philadelphia region. Amend. Compl. at ¶ 14. Specifically, these projects included the Girard Avenue Infrastructure Renewal Project ("the Girard Project"); the PATCO Egress Lighting Project ("the PATCO Project"); the SEPTA Wayne Junction to Glenside and Signal Project ("the Wayne Junction Project"); and the SEPTA Smart Stations Project I and II ("the Smart Stations Project"). Id.[3] Each of the projects was funded by grants from federal agencies and the Federal Transit Administration ("FTA"). Id. at ¶¶ 18-19. The grants included federal regulatory requirements, including the DBA. Id. at ¶¶ 20, 21.

The contracts for the projects each required Farfield to pay prevailing wages to its employees that were determined by the Secretary of the United States Department of Labor ("DOL") pursuant to the DBA. Id. at ¶ 30. Farfield was also contractually required to submit the certified payrolls and an accompanying "Certificate of Compliance" to

---

[3] During a status conference held on February 1, 2017, the plaintiff advised me of their intent to withdraw their claims relating to four of the five projects identified in their Amended Complaint, maintaining their claims regarding only the Wayne Junction Project. To date, plaintiff has not amended the Amended Complaint.

SEPTA or the Delaware River Port Authority ("DRPA") on a weekly basis, which were then submitted to the FTA. Id. at ¶¶ 32, 33.

   A. Department of Labor's 2004 Audit of Farfield

In September 2004, the DOL conducted an audit of Farfield's practices under the DBA, the Fair Labor Standards Act, and the Contract Work Hours and Safety Standards Act. Pierce Aff. at ¶ 10.[4] By then, Farfield had completed the Girard Project, the PATCO Project, and the Wayne Junction Project. Id. at ¶ 12. The audit consisted of a site visit, interviews of Farfield employees, and documents concerning Farfield's classification and payment of employees.[5] Id. at ¶ 13.

   B. Investigations of Farfield's Bidding and Payment Practices

Local 98 conducted an independent investigation of Farfield's bidding and payment practices on the projects. Amend. Compl. at ¶ 25. Plaintiff claims that this investigation revealed that Farfield misclassified a significant number of its workers to pay them a lower rate than required. Id. at ¶ 26. Specifically, plaintiff claims that in order to gain a bidding advantage, Farfield manipulated the number of workers it planned to assign to each DOL classification by intentionally allocating individuals to the Laborer and Groundsman classifications although it knew that many of these workers would be

---

[4] The affidavit of Dennis Pierce was filed with Farfield's motion to dismiss in 2012 (Doc. No. 35-2) and is attached as Exhibit B to Farfield's response to plaintiff's memorandum on the issue of expert testimony (Doc. No. 138-3).
[5] The audit revealed that Farfield had paid four (4) employees the shop rate for the Labor Day holiday rather than the prevailing wage rate, which amounted to $811.52 owed to the underpaid workers. Pierce Aff. at ¶ 14.

performing Electrician's work.[6] Id. at ¶¶ 36 c, d. This allegedly allowed Farfield to underestimate its labor costs and underbid competitors in order to win the public works contracts. Id. at ¶¶ 25, 36g. Farfield's course of conduct was devised, authorized and effectuated by Farfield senior level management employees. Id. at ¶ 36.

Plaintiff alleges that once Farfield was awarded the contracts, it continued to misclassify workers who performed electrical work and submitted fraudulent certified payrolls to SEPTA and DRPA.[7] Amend. Compl. at ¶ 36 m. For example, plaintiff alleges that employees classified and paid as Laborers performed Electrician's work, such as pulling cable, terminating wire, installing switch gears, installing junction boxes and terminations, installing conduit and performing hot and cold wiring tasks. Id. at ¶ 36 v. Plaintiff claims that the certified payrolls often did not reflect the proper wage rates for the actual work performed by Farfield's employees and were prepared and submitted with the intention that the false certifications would be material to the FTA's decision to pay or approve the claims. Id. at ¶¶ 36 aa, cc.

## II. RELEVANT PROCEDURAL HISTORY

Local 98 filed its initial Complaint on September 17, 2009. Doc. No. 1. Pursuant to the FCA, Local 98 gave the U.S. Department of Justice ("USDOJ") an opportunity to

---

[6] The prevailing wages for a Laborer and Groundsman are less than the prevailing wage for an Electrician. Id. at ¶¶36 e, f.

[7] The plaintiff claims that the foreman on the work site would prepare a foreman's log/report identifying and recording the employees performing the work, the location of the work, and a description of the type of work performed. Id. at ¶36 n. This information was then transferred to a time sheet and given a Phase Code. Plaintiff alleges that the wage rate recorded on the time sheets was crucial to the underpayment and misclassification of Farfield's employees. Id. at ¶ 36 q.

intervene, which it declined on September 21, 2011.[8] Doc. No. 3. The Complaint was unsealed on October 31, 2011. Doc. No. 4. In response to defendant's first motion to dismiss (Doc. No. 25), Plaintiff filed an Amended Complaint on February 3, 2012. Doc. No. 30.

Defendant then filed a motion to dismiss the Amended Complaint or in the alternative for summary judgment. Doc. No. 35. Defendant argued that the Court lacked subject matter jurisdiction because the DOL had exclusive jurisdiction over plaintiff's claims, which concerned classification disputes under the DBA. Doc. No. 35 at 11-13 (citing Coutu, 450 U.S. at 761, 101 S. Ct. at 1457) (also citing C.F.R. § 5.6(a)(3)).[9]

The plaintiff argued in opposition that this matter did not involve a complex classification dispute because the relevant contracts set forth a "clear and undisputed prevailing wage practice." Doc. No. 41 at 7-8. The plaintiff reasoned that "where a prevailing wage practice exists and is undisputed, or where the classification of work is not in question, the courts need not defer to the DOL." Doc. No. 41 at 8 (citing United

---

[8] An action under the FCA may be commenced in two ways. The USDOJ may file suit to collect damages suffered as the result of fraudulent claims which cause government money to be expended from the United States Treasury. Alternatively, a private plaintiff may bring a qui tam action on behalf of the government to recover losses incurred because of fraudulent claims. 31 U.S.C. § 3730(b)(1). When a private plaintiff brings a qui tam action, the government is permitted to intervene. But the private plaintiff may continue his suit even if the government declines to intervene. 31 U.S.C. § 3730(c)(1). If the qui tam suit is ultimately successful, the private plaintiff, known as a relator, is entitled to up to 30% of the funds the government recovers. 31 U.S.C. § 3730(d).

[9] Defendant also argued that the DOL had previously investigated wrongdoing with respect to classifications and therefore plaintiff could not bring a subsequent action. In addition, defendant argued that plaintiff failed to state its FCA claim with the requisite particularity called for by Fed. R. Civ. P. 9(b) and that plaintiff failed to supplement the deficient pleadings even in its Amended Complaint.

States ex rel. Plumbers & Steamfitters Local Union No. 342 v. Dan Caputo Co., 152 F.3d 1060 (9th Cir. 1998) (per curiam)). Plaintiff distinguished the present case from Dyncorp, Inc., supra, noting that in that case, the classification dispute was complex because "the underlying contract was for work falling beneath two separate federal wage laws and the classifications of work subject to the two laws were not aligned." Doc. No. 41 at 10. In contrast, the plaintiff argued that this case did not involve such complexity because the undisputed wage rates were clearly stated in the contract and because the DOL's classification of work under the contract was also undisputed. Doc. No. 41 at 10.

In my Memorandum dated July 2, 2013, I denied defendant's motion to dismiss and held, in part, that this court had subject matter jurisdiction. The decision hinged on the fact that the classifications at issue were not complex:

> The dispute is, in fact, whether Defendant properly classified its employees for purposes of wage determinations under the DBA. However, these classifications are not complex and were previously defined by the department of labor with regard to the work performed.
>
> . . . .
>
> Although very muddled, the dispute here is simply whether the Defendant misclassified the workers into categories, for which the DOL has previously determined the type of work within each classification. This misclassification allegedly resulted in the underpayment of workers. The parties dispute the appropriate payment for the classifications; however, I find that the alleged falsity of the false statement "is not dependent on interpretation" of classifications and wage determinations. Therefore, jurisdiction is appropriate in the court system.

U.S. ex rel. Int'l Brotherhood of Electrical Workers, Local Union No. 98 v. The Farfield Co., No. 09-4230, 2013 WL 3327505 at *7 (E.D.Pa. Jul. 2, 2013).

A status conference was held on February 1, 2017 at which time the plaintiff explained that it wished to offer three electrical trade industry experts as witnesses at trial. Defendant opposed the request. I issued an Order setting forth a briefing schedule on the issue of expert testimony. On February 17, 2017, the plaintiff filed a memorandum of law on the issue of non-scientific testimony. Doc. No. 137. The plaintiff argued, in part, that trade industry testimony would aid the trier of fact "to determine the proper classification to assign for various types of work performed by Farfield tradesman . . . ." Id. at 6. Expert testimony was "critical for Plaintiff to be able to prove that Farfield misclassified its employees . . ." Id. at 17.

In response, defendant argued not only that expert testimony was improper but also that this court lacked subject matter jurisdiction. Doc. No. 138. The defendant's primary argument essentially boils down the following: if the classifications at issue are so complex as to require expert testimony, then this Court lacks jurisdiction and the matter should be dismissed and referred to the DOL. Id.

On March 9, 2017, the plaintiff moved for leave to file a reply brief addressing arguments outside the scope of non-scientific expert testimony. Doc. No. 139. On September 12, 2017, I issued an order granting the plaintiff's motion for leave to reply. On September 19, 2017, plaintiff filed a reply brief. Doc. No. 141. The issue is whether the Court has jurisdiction to address plaintiff's claims under the DBA and the FCA, or if

the issue of worker classifications and wage determinations must first be referred to the DOL under the doctrine of primary jurisdiction.[10]

### III. LEGAL STANDARD

The primary jurisdiction doctrine "allows courts to refer a matter to the relevant agency whenever enforcement of the claim requires the resolution of issues which have been placed within the special competence of an administrative body." Charvat v. Echostar Satellite, LLC, 630 F.3d 459, 466 (6th Cir. 2010); MCI Telecomms. Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1105 (3d Cir. 1995) (primary jurisdiction applies where "the administrative agency cannot provide a means of complete redress to the complaining party and yet the dispute involves issues that are clearly better resolved in the first instance by the administrative agency charged with regulating the subject matter of the dispute.") (internal quotations and citations omitted).

Primary jurisdiction does not divest the federal court of subject matter jurisdiction. Reiter v. Cooper, 507 U.S. 258, 268 (1993). Under the doctrine, a court may defer adjudication until the administrative agency has made a designated determination. Padgett v. Stein, 406 F. Supp. 287, 302 (M.D. Pa. 1975); see Fieger v. United States Att'y Gen., 542 F.3d 1111, 1121 (6th Cir. 2008) ("[Under] the doctrine of primary jurisdiction, . . . federal courts are to abstain from hearing certain administrative-related

---

[10] Defendant argues that this court lacks subject matter jurisdiction to hear the case, improperly conflating subject matter jurisdiction with the primary jurisdiction doctrine. As discussed below, primary jurisdiction does not divest a federal court's subject matter jurisdiction. It merely "postpones" the Court's ability to hear a case. Ferrare v. IDT Energy, Inc., No. 14-4658, 2015 WL 3622883, at *3 (E.D.Pa. Jun. 10, 2015). The issue in this case is not whether this court has subject matter jurisdiction, which it does. The issue is whether the matter must be referred to the DOL for resolution of the proper worker classifications.

matters until the appropriate agency has had the opportunity to interpret unanswered technical and factual issues."); see also Erie Ins. Exchange ex rel. Beltz v. Stover, 619 Fed. Appx. 118, 121 (3d Cir. 2015) ("referrals on the basis of primary jurisdiction do not expel the parties from federal court. Rather, such referrals are better viewed as jurisdictional abstention in cases where protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme. Court jurisdiction is not thereby ousted, but only postponed.") (internal citations and quotations omitted).

The Third Circuit applies a four-factor test to determine whether the doctrine of primary jurisdiction is applicable:

> (1) Whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) Whether the question at issue is particularly within the agency's discretion; (3) Whether there exists a substantial danger of inconsistent rulings; and (4) Whether a prior application to the agency has been made.

Baykeeper v. NL Indus., Inc., 660 F.3d 686, 691 (3d. Cir. 2011).

When these factors weigh in favor of the application of the doctrine, a court will either dismiss the matter without prejudice or stay its proceedings in order to give the parties a reasonable opportunity to refer the matter to an agency for an administrative ruling. United States ex rel. Wall v. Circle C. Constr., L.L.C., 697 F.3d 345, 352 (6th Cir. 2012) (reversed on other grounds); Erie, 619 Fed. Appx. At 121-122 (noting that it was "immaterial that the District Court opted to dismiss the action without prejudice rather than issue a stay . . . the Supreme Court has specifically sanctioned dismissal without

prejudice as appropriate when referring issues to an administrative agency on the basis of primary jurisdiction.").

## IV. DISCUSSION

Congress enacted the FCA to protect government funds and property from fraudulent claims. Specifically, the FCA imposes liability on any person who "knowingly presents" to the government a "false or fraudulent claim for payment or approval," Dyncorp, Inc., 895 F. Supp. at 849-50 (quoting 31 U.S.C. § 3729(a)(1) (Supp. 1995)), or who "knowingly makes . . . a false record" in order to have "a false or fraudulent claim paid or approved by the government." Id. (quoting 31 U.S.C. § 3729(a)(2)).

FCA suits may be preempted in cases involving specific factual issues that are reserved for agency discretion, or involving an underlying regulatory scheme that addresses identical fraudulent activity. Courts have held that FCA suits based on DBA violations[11] are preempted when the assessment of falsity turns on whether the defendant misclassified its employees-a factual determination that is reserved for the DOL. See e.g., Dyncorp, Inc., 895 F. Supp. at 851; Found. for Fair Contr., Ltd. v. G&M E. Contr., Inc., 259 F. Supp. 2d 329 (D.N.J. 2003); Wall, 697 F.3d at 353.

Whether the doctrine of primary jurisdiction is applicable, therefore, depends on whether the claims' false or fraudulent nature would require the Court to decide a matter

---

[11] The DBA requires that government construction contracts contain a provision stating, "the minimum wages to be paid various classes of laborers and mechanics . . . shall be based on the wages the Secretary of Labor determines to be prevailing" in the locality. 40 U.S.C. § 3142(a)-(b). This is based on the tasks the workers perform. Tele- Sentry Sec., Inc. v. Secretary of Labor, Case No. 90-0912, 1991 WL 178135, at *4 (D.D.C. Aug. 30, 1991). Therefore, the Secretary of the DOL has exclusive authority to establish minimum wages for particular classifications of laborers and mechanics in particular localities and to define the work that is included within each classification where there is any ambiguity.

exclusively reserved for the Secretary of the DOL. Where it "is impossible to determine whether [defendant] submitted a false claim to the government without first determining whether [defendant] actually misclassified an employee in a given instance….[,] the responsibility for resolving such disputes rests not with the courts, but with the Department of Labor." DynCorp., Inc., 895 F. Supp. at 851.[12] See United States ex rel. Local Union 217 v. G.E. Chen Constr., Inc., 954 F. Supp. 195, 197 (N.D. Cal. 1997) (holding that to the extent that the plaintiffs' FCA claims were based on allegations that the defendants misclassified employees, the court lacked jurisdiction to decide those claims, which were within the sole jurisdiction of the DOL); Dan Caputo, 152 F.3d at 1062 (holding in FCA suit regarding contractors' classification of employees for purposes of the DBA, that deferral to the DOL was appropriate "only with respect to the resolution of how particular types of work should be classified but not with respect to whether the Contractors misclassified their employees").

It is undisputed that the relevant contracts are subject to the DBA and, therefore, the DOL is responsible for determining the proper work classifications and the appropriate prevailing minimum wage of employees within each classification on the public works project. The issue is whether this case concerns complex classifications, which would necessitate deference to the DOL.

In my previous order denying defendant's motion to dismiss, I held that although the dispute at issue was whether defendant properly classified its employees, the

---

[12] The DynCorp court also held that "a Davis-Bacon Act worker classification dispute, by itself, is not an FCA claim because such disputes must be resolved by the Department of Labor." 895 F. Supp. at 852.

12

"classifications were not complex and were previously defined by the Department of Labor with respect to work performed." The plaintiff's recent request for expert testimony cuts against this holding. Plaintiff's counsel is correct that expert testimony will aid the trier of fact in understanding the various classifications and wage determinations. It is this need for expert testimony that suggests that the classifications are complex. It follows that this issue is properly left to the DOL and the doctrine of primary jurisdiction is applicable. See Dyncorp Inc., 895 F. Supp. at 852 ("That both parties have retained experts to assist the jury in this undertaking further underscores the wisdom in requiring classification disputes to be resolved in the administrative arena.").

I find further support for the doctrine's application in the four-factor test enumerated by the Third Circuit. It is undisputed that worker classifications and wage determinations are technical policy considerations in the DOL's field of expertise. The issue of worker classifications is within the agency's discretion, and is expressly reserved for the Secretary of the DOL. In light of the complexity of the classifications, which is highlighted by the need for expert testimony, there is a substantial danger of inconsistent rulings. Finally, although the DOL has ruled, generally, on these classifications, a prior application has not been made in this specific case. Applying these factors, it is appropriate to defer to the primary jurisdiction of the DOL.

The court's analysis in Framlau Corp. v. Dembling, 360 F.Supp. 806 (E.D.Pa.1973), is instructive. There, the defendant argued that the court lacked subject matter jurisdiction because the issue concerned the scope of a classification under the

DBA. Id. at 809. Specifically, the defendant argued that the plaintiff's claim was not subject to judicial review, reasoning:

> [P]laintiff's claim concerns an interpretation by the Secretary of Labor of his own prevailing wage determination, i.e., what activities constitute the work of a plumber, electrician, etc., and what phases of construction activities constitute the work of a laborer . . . .

Id. The court agreed, noting that "the scope of a classification is part of the wage determination process and exclusively within [the Secretary of Labor's] jurisdiction and that the correctness of his determination of wage rates is not subject to judicial review." Id.[13]

Likewise, here, the plaintiff asserts that expert testimony is necessary to define the scope of the worker classifications and the interpretation of wage rates. The plaintiff concedes that "at issue in this litigation are the following worker classifications (in order of highest wage rate to lowest wage rate): Journeyman, Lineman, Laborer, and Groundman [sic]." Doc. No. 137 at n. 2. More specifically, plaintiff argues:

> [T]rade industry testimony would certainly be helpful for the trier of fact in understanding the specialized nature of electrical work, as well as differences between various classifications of electrical workers. Hearing such testimony would also assist the trier of fact to determine the proper worker classification to assign for various types of work performed by Farfield tradesman, and thereby whether there is liability with respect to misclassification of employees, as well as the extent of damages.

Id. at 6. Plaintiff also argues that experts are necessary to evaluate the wage determination process because the Secretary of Labor did not include instructions on ensuring proper classification and compensation. Id. at 10. Expert testimony would

---

[13] The court ultimately held that it had subject matter jurisdiction because the plaintiff sought review of the absence of due process, not review of the substantive decision. Id.

provide a "base of knowledge through which to ensure compliance with the Davis Bacon Act" and is necessary to demonstrate that the defendant misclassified its employees. Id. at 10, 17.

The very fact that plaintiff urges the necessity of expert testimony to elucidate the proper worker classifications leads me to believe that this is a complex classification dispute, and is a determination exclusively reserved for the Secretary of Labor. On the other hand, if plaintiff is disputing the Secretary's interpretation of employee classifications and wage rate determinations, this too is not subject to judicial review. Coutu, 450 U.S. at 761; Abhe & Svoboda, Inc. v. Chao, 508 F.3d 1052 (D.D.C. Nov. 23, 2007) ("we hold that the court lacks subject matter jurisdiction over the Company's claim that the findings in the limited area practice survey that determined the locally prevailing practice of classifying jobs are not supported by substantial evidence because this represents a challenge to the substantive correctness of the Secretary's wage determinations. Wage determinations implicitly include the locally prevailing practice of classifying jobs.").[14] Either way, the "alleged falsity of the statement" is in fact "dependent on interpretation" of worker classifications and wage determinations. I find

---

[14] The court's analysis in Abhe, supra, involved a substantive challenge to the DOL's findings. Plaintiff argues that this case does not involve a substantive challenge, instead arguing that expert testimony is necessary to inform the fact-finder as to the "nature of Local 98 and Local 126 practices, in order to demonstrate that in this case, Farfield falsely certified with reckless disregard that it paid its employees the applicable Davis Bacon rates for the work performed." Doc. No. 141 at 8 (emphasis in original). The fact that plaintiff seeks expert testimony because the wage determinations do not "on their face" demonstrate how the classifications should be assigned requires a substantive review of the scope and correctness of the Secretary's findings, which is not subject to judicial review. United States v. Binghamton Constr. Co., 347 U.S. 171 (1954) ("the correctness of the [Secretary of Labor's] determination of wage rates is not subject to judicial review.").

15

that the doctrine of primary jurisdiction is applicable and the matter should be referred to the DOL.[15]

In light of the extensive discovery that has taken place over the eight years since this case has been pending, principles of judicial economy urge that a stay is appropriate, rather than outright dismissal. Accordingly, I will stay this matter pending referral to the DOL to resolve the issue of worker classifications and wage determinations.

An appropriate Order follows.

---

[15] Plaintiff also argues that this court has jurisdiction based on the law of the case doctrine. Because I agree with plaintiff that primary jurisdiction does not divest the court of subject matter jurisdiction, this argument is moot. This Court has subject matter jurisdiction to hear plaintiff's claims under the DBA and the FCA, but I must defer primary jurisdiction to the DOL on the issue of the complex worker classifications and wage determinations.