## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** *ex rel.* **INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNION NO. 98** | : **CIVIL ACTION**<br>:<br>:<br>:<br>: |
| **v.** | : **No. 09-4230**<br>: |
| **THE FARFIELD COMPANY** | : |

## MEMORANDUM

**KEARNEY, J.**                                                                 **May 2, 2019**

Electrical contractor The Farfield Company moves to dismiss arguing a federal court may not decide whether it misclassified its union electricians because the Department of Labor declined to resolve this worker classification issue which it claims is central to a False Claims Act case. The Farfield Company argues the misclassification claims are "nonjusticiable" without the Department of Labor's determination. We agreed with The Farfield Company as to a need for the Department of Labor to initially review this issue within its expertise. The Plaintiff inexplicably neglected to do so for over a year. Upon assignment to our docket, we directed the Plaintiff immediately ask for a referral. The Department of Labor declined the referral several weeks ago. But its declination does not destroy our subject matter jurisdiction. It simply declined to invest public resources in this analysis of conduct over a decade ago. We know of no authority, and The Farfield Company offers none, suggesting a party seeking a remedy otherwise within our jurisdiction is not welcome here because the Department of Labor declined the first opportunity to review the worker misclassification issue. We properly deferred to the Department of Labor under the primary jurisdiction doctrine, but with it declining to investigate, we must proceed requiring the Plaintiff prove the misclassification.

## I.    Background

Nearly ten years ago, on September 17, 2009, the International Brotherhood of Electrical Workers Local Union No. 98 (the "Union") filed a sealed complaint under the False Claims Act

[1] on behalf of the United States against The Farfield Company ("Farfield"). The Union alleged Farfield, an electrical contractor, violated the False Claims Act when it intentionally misclassified workers performing electrician's work as laborers, groundsmen, or other classifications with lower pay rates, to gain a bidding advantage over its competitors on five federally funded construction projects on Philadelphia-area transit systems between 2001 and 2007 in violation of the Davis-Bacon Act.[2]

Two years later, on September 21, 2011, the United States declined to intervene in the action. The court unsealed the complaint. The Union filed an amended complaint on February 3, 2012.[3] In its amended complaint, the Union again alleged Farfield intentionally and knowingly misclassified workers performing electrician's work to gain a competitive bidding advantage on same the federally funded construction projects between 2001 and 2009.[4]

The Union alleges it investigated Farfield's practices and found Farfield "designed and implemented a scheme of under-bidding prevailing wage projects by classifying workers at lower hourly wage rates than permitted by the Davis-Bacon Act."[5] The Union identified nine employees working as electricians on the federally-funded transit projects who Farfield allegedly paid at rates below the prevailing wage based on Farfield's false certifications submitted to SEPTA and PATCO knowing it misclassified these employees.[6]

### *Farfield moves to dismiss the amended complaint.*

Farfield moved to dismiss the amended complaint arguing, *inter alia*, the court does not have subject matter jurisdiction over this dispute because the Department of Labor has "exclusive

2

jurisdiction" over the matter.[7] Farfield argued disputes over proper classification of workers under the Davis-Bacon Act are reserved exclusively to the Department of Labor.[8]

The Union responded we have subject matter jurisdiction to determine whether Farfield violated the False Claims Act and there is no conflict with the Department of Labor's exclusive jurisdiction.[9] The Union argued the "prevailing wage practice is undisputed," there are no classification question, there are no complexities or uncertainties in the case requiring any determination by the Department of Labor, the projects at issue are "governed by contracts which set forth a clear and undisputed prevailing wage practice," and the court has exclusive jurisdiction over the matter.[10]

On July 2, 2013, the Honorable Lawrence F. Stengel denied Farfield's motion to dismiss.[11] Judge Stengel found the Department of Labor has exclusive authority to establish minimum wages for particular classification of laborers and mechanics and to define work included within each classification where there is any ambiguity.[12]  Judge Stengel explained the primary jurisdiction doctrine allows a court to defer adjudication until the appropriate agency makes a determination "placed within the special competence of an administrative body."[13]  Judge Stengel concluded the parties' dispute centered on whether Farfield "properly classified its employees for purposes of wage determinations" under the Davis-Bacon Act.[14]  But Judge Stengel found these classifications are "not complex and were previously defined by the department of labor with regard to the work performed" and resolution of the Union's allegations of false statements in misclassification resulting in underpayment to workers "is not dependent on interpretation" of classification and wage determinations.[15]  In reaching his conclusion, Judge Stengel relied on the Union's argument, in opposition to the motion to dismiss, its allegations do not involve a complex classification dispute. Judge Stengel denied Farfield's motion, and found the court's jurisdiction appropriate.[16]

3

### *The Union seeks experts for trial on classification issues*
### *it previously represented as not complex.*

The parties engaged in discovery for years, including the appointment of a special discovery master to handle discovery disputes. Discovery continued until an early 2017 status conference where the Union described offering three electrical trade industry experts as witnesses at trial. Judge Stengel ordered the parties to submit briefing on the issue of expert testimony.[17]

Contradicting its earlier position there are no complex classification issues requiring Department of Labor determination, the Union argued it needed expert testimony to oppose any summary judgment motion filed by Farfield and to prove its case at trial.[18] The Union argued its three experts will "provide a yardstick against which to measure the reasonableness of Farfield's classification of its employees, and thus establish that Farfield acted in reckless disregard of its contractual and statutory compliance obligations."[19]

Farfield contended expert testimony is improper and the court lacks subject matter jurisdiction, arguing if worker classifications are so complex as to require expert testimony, then the court lacks jurisdiction and the matter must be dismissed and referred to the Department of Labor for classification and wage determinations.[20]

### *The court stays the action and orders the Union to refer the matter*
### *to the Department of Labor.*

On September 26, 2017, the court stayed, rather than dismissed, the case pending referral to the Department of Labor to resolve the issue of worker classifications and wage determinations under the primary jurisdiction doctrine.[21] Judge Stengel explained his earlier order denied Farfield's motion to dismiss based largely on the Union's representation worker classifications are not complex and previously defined by the Department of Labor with respect to the work performed.[22] Judge Stengel explained the Union's "recent request for expert testimony cuts

4

against this holding," finding the Union's "need for expert testimony ... suggests that the classifications are complex" and "that this issue is properly left to the [Department of Labor] and the doctrine of primary jurisdiction is applicable."[23]

The Union did not move to reconsider the September 26, 2017 Order or otherwise challenge staying the matter pending referral to the Department of Labor for a determination of worker classification and wage determinations. It also did nothing to refer the matter to the Department of Labor or otherwise attempt to prosecute its case.

Over a year later, and after reassignment to our calendar,[24] we ordered the parties to submit a joint status report.[25] The Union then conceded it "has not yet referred this matter to the Department of Labor."[26] During a status call with all counsel, including for the United States, the Union's counsel represented his attempts to refer this matter to the Department of Labor were stymied by the Department's position it has no protocol to undertake such an investigation on a referral from a federal court.

### *We ordered briefing on the futility of referral to the Department of Labor under the primary jurisdiction doctrine.*

We removed the case from suspense and, after conference with counsel, granted Farfield leave to file a motion to dismiss the amended complaint on the issue of whether the Order referring the case to the Department of Labor under the primary jurisdiction doctrine should be excused as futile and, if so, the effect of the excusal under the September 26, 2017 order.[27]

Farfield again moved to dismiss the Union's first amended complaint arguing if the Department of Labor is unable to make a classification determination, the matter is "nonjusticiable" and, under the primary jurisdiction doctrine, we have no jurisdiction over the matter.[28] Farfield additionally argued we should not excuse the Union's "contempt" by failing to

5

comply with Judge Stengel's Order referring the matter to the Department of Labor and the Union's unclean hands in causing the long delay in the case.

The Union responded a referral to the Department of Labor is futile because there is no mechanism for a referral from a federal court to the Department of Labor; under its policy, the Department of Labor will not investigate allegations of Davis-Bacon Act violations more than two or three years old; the Department of Labor is estopped from pursuing administrative action because the United States declined to intervene in the case; and, we have jurisdiction to resolve the issues.[29]

The United States filed a statement of interest declining to take a position on Farfield's motion or whether we should excuse as futile the referral to the Department of Labor.[30]

After review, we denied Farfield's motion without prejudice to be renewed after the Union referred the matter to the Department of Labor; ordered the Union to refer the matter to the Department of Labor by December 26, 2018; placed the matter in suspense; and ordered the Union provide us with monthly status reports.[31]

### *The Department of Labor declines the referral.*

In its third monthly report on March 15, 2019, the Union represented the Department of Labor declined referral (the "Letter")[32] primarily because of "the passage of time and the significant resources that would be necessary to investigate a closed contract."[33] The Department explained:

- by the time it received the referral in December 2018, "performance under the contract had been completed and the contract had been closed for over ten years";

- Wage and Hour Division "resources and workload generally do not permit investigations into closed contracts";

6

- "[r]equesting the payment of back wages after performance of a contract has been completed, and when no funds remain to be withheld on the contract, is typically not feasible";

- "where contract payments have not been withheld, a six-year statute of limitations for enforcement of Davis-Bacon Related Act requirements typically would apply";

- the Wage and Hour Division "cannot determine whether the workers in question were misclassified and underpaid without an investigation concerning the specific work they performed, and [the Wage and Hour Division] is not in a position to conduct such an investigation under the circumstances present in the case";

- "[a] precise wage/classification determination would be challenging given the significant passage of time in this case"; because of the contradictory evidence presented by the parties "any investigation in this case likely would be highly fact-intensive" such that the Department "presumably would have to invest significant resources and time to make a determination such as would be required by the Referral";

- the Wage and Hour Division investigated Farfield's compliance with the Davis-Bacon Act on the contracts in Fall 2004,[34] "however, not only did that investigation not result in any finding of misclassification, conducting a wage/classification determination at this juncture would require an entirely new investigation (including review of additional documentation and witness interviews) that [the Wage and Hour Division] is ill-positioned to conduct ..."; and

- "it is within the discretion of the [Wage and Hour Division] Administrator to decide whether to enforce Davis-Bacon labor standards in a particular case.[35]

We allowed the parties to move for relief based on the Department of Labor's Letter.[36]

Farfield renewed its motion to dismiss.[37] The Union opposed Farfield's motion and moved to remove this case from suspense and put it on our active trial docket.[38] The United States did not file a statement of interest in the current round of motions.

## II.  Analysis

We today know the Department of Labor declined referral of this matter as contemplated in the September 26, 2017 Order. We are now faced with the question of how the Department's declination to take the referral affects resolving this dispute. According to Farfield, the Department's unwillingness to accept referral of the worker misclassification issue is the death

7

knell for the Union's claims. Farfield contends the Department's decision renders this matter nonjusticiable; we cannot grant the Union relief under the False Claims Act without the Department's misclassification determination; and, we must dismiss the case with prejudice.

The Union responds the Department of Labor's declining the referral demonstrates the futility of referral in the first place. The Union contends we have, and always had, subject matter jurisdiction over this action and may resolve the misclassification issues and, if we dismiss the matter, it will be out of court and left without a remedy.

## A. The primary jurisdiction doctrine.

The primary jurisdiction doctrine "allows court to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency."[39] The doctrine "applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views."[40] As directed by our Court of Appeals in *Baykeeper*, where the doctrine applies, the "judicial process is suspended"—*not* divested of jurisdiction.

The primary jurisdiction doctrine is prudential and does not "implicate[] the subject matter jurisdiction of the federal courts."[41] The doctrine is "better viewed as 'judicial abstention in cases where protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme. Court jurisdiction is not thereby ousted, but only postponed.'"[42]

In *Farfield II*, Judge Stengel determined the primary jurisdiction doctrine is applicable here under *Baykeeper's* four-factor test.[43] He stayed the matter pending referral to the Department of Labor to resolve the worker classification issue and wage determinations. Judge Stengel rejected

8

Farfield's argument the court lacked subject matter jurisdiction as "improperly conflating subject matter jurisdiction with the primary jurisdiction doctrine," finding the "primary jurisdiction doctrine does not divest a federal court's subject matter jurisdiction. It merely 'postpones' the Court's ability to hear a case."[44]

## B. What is the effect of the Department of Labor's declining the referral?

At the time we issued our November 28, 2018 Order, we had no evidence of the Department of Labor's position. Now we do. The Department of Labor declined to take the referral for numerous reasons but primarily because of the passage of time and the amount of resources necessary to investigate a "closed contract." The question today is whether the Union's claims *must be* dismissed with prejudice, as Farfield urges, because the Department of Labor declined the referral.

Farfield's arguments we must dismiss the Union's amended complaint with prejudice fall generally into two categories: first, Farfield appears to make—although not articulated as such—a *res judicata* or law of the case argument contending Judge Stengel "already ruled" the misclassification issue must be decided by the Department of Labor because "the Court is ill-equipped to resolve it" and because the Department has "exclusive authority" over the classification issue requiring us to now dismiss the case; and, second, the Department of Labor's Letter demonstrates it investigated Farfield's compliance with the Davis-Bacon Act in Fall 2004 and found no misclassification leading the Department to now conclude it will not "re-investigate" Farfield, another reason why we should now dismiss the case.

### *The September 26, 2017 stay.*

Farfield contends the court: "already ruled" the misclassification issue should be decided by the Department of Labor "because the Court is ill-equipped to resolve it"; "already determined"

9

the Department has "*exclusive authority*" over complex worker classification issues "necessitate[ing] deference to the DOL," suggesting preemption of False Claims Act claims by the Davis-Bacon Act; and expressed concern for the "substantial danger of inconsistent rulings."[45]

Farfield argues the court's reasoning for referring the classification issues to the Department of Labor under the primary jurisdiction doctrine means, *a fortiori*, the matter must be dismissed with prejudice because the Department declined to take the referral. But the court's analysis arose in the context of whether the primary jurisdiction doctrine is applicable in the first instance; its decision did not address the effect of the Department's declination of the referral and it did not hold it lacked subject matter jurisdiction if the Department would not, or could not, take the referral.[46] To the contrary, the court made it a point to explain the doctrine does *not* divest a court of jurisdiction and simply allows it to "defer adjudication until the administrative agency has made a designated determination."[47] This, of course, presumes the agency will make a determination. We do not read Judge Stengel's decision to mean if the Department declines the referral then the case must be dismissed. We read Judge Stengel's decision as applying the primary jurisdiction doctrine which, as he noted, allows a court to "either dismiss the matter *without prejudice* or stay its proceedings in order to give the parties a reasonable opportunity to refer the matter to an agency for an administrative ruling."[48] We have no administrative ruling.

Farfield does not provide us with authority, nor could we find any, holding the effect of an agency's refusal—for whatever reason—to accept a referral under the primary jurisdiction doctrine requires a federal court to dismiss the matter with prejudice as "nonjusticiable."[49] We found primary jurisdiction cases arising in the context of Food and Drug Administration determinations in cosmetic and food labeling. For example, in *Astiana v. Hain Celestial Group, Inc.*, the United States Court of Appeals for the Ninth Circuit reversed the district court's dismissal, rather than a

10

stay, of a matter based on the primary jurisdiction doctrine.[50] In *Astiana*, plaintiffs challenged whether cosmetics labeled as "all natural," as claimed by the defendants, violated the federal Magnuson-Moss Warranty Act and California's unfair competition and false advertising statutes and common law.[51] The definition of "what is 'natural' for cosmetics labeling is both an area within the FDA's expertise and a question not yet addressed by the agency."[52] The Court of Appeals held while the district court properly invoked primary jurisdiction, it erred in dismissing the case without prejudice rather than staying the action "while the parties (or the district court) sought guidance from the FDA."[53]

The Court of Appeals recognized the definition of "natural" on cosmetic product labels is "'a particularly complicated issue that Congress has committed to the FDA'" and "[o]btaining expert advice from that agency would help ensure uniformity in administration of the comprehensive regulatory regime established by the FDCA."[54] The agency, however, issued a letter in another litigation "declin[ing] to make a determination … with respect to labeling genetically engineered ingredients as 'natural.'"[55] In reversing the district court's dismissal, rather than stay, the Court of Appeals cautioned "[o]n remand, the district court may consider whether events during the pendency of this appeal—including [plaintiff's] informal letter [to the FDA requesting a determination of the term 'natural'], the FDA's website publication of a Small Business Fact Sheet regarding cosmetics labeling, and the FDA's response to the other courts—affect the need for further proceedings at the FDA or demonstrate that another referral to the agency would be futile."[56]

On remand, the district court addressed defendants' motion to stay.[57] The district court found the Food and Drug Administration's position declining to determine the term "natural" in cosmetic labelling "shows that the 'agency is aware of but has expressed no interest in the subject

11

matter of the litigation.'"[58]  The district court concluded a "formal referral would be futile" and denied the motion for stay, "to the extent that it is based on the need for FDA referral."[59]  In our dispute, we are reviewing the Department of Labor's Letter declining to take the referral based on "the passage of time and the significant resources ... necessary to investigate a closed contract."

We are also guided by a recent case from the United States District Court for the Southern District of New York lifting a stay in a multi-district litigation challenging the terms "all natural" and "non-GMO" on food labels.[60]  In the *Kind LLC* case, the court previously stayed claims challenging the term "all natural" in food labeling under the primary jurisdiction doctrine finding the Food and Drug Administration's "rulemaking process should run its course before allowing those claims to proceed in court."[61]  Although the FDA announced a notice and comment period on the term "natural" in food labeling, it never formally issued guidance after closing the comment period.  The court found the FDA "'exhibited little discernible activity' with respect to 'natural' rulemaking" and with "no indication whether the FDA is earnestly working toward a uniform 'natural' standard, or whether it has shelved that effort ... [there is] no telling when the FDA [would] complete its work on the term 'natural,' must less provide any public guidance on its progress."[62]  With no resolution from the FDA, the court lifted the stay.[63]

In another recent case, the United States District Court for the District of Connecticut denied a motion to dismiss or stay a case under the primary jurisdiction doctrine in a matter challenging the term "spring water" used in labeling.[64]  Nestlé moved to dismiss under the primary jurisdiction of the Food and Drug Administration to determine whether the term "spring water" used in bottled water meets the "standards of identity" for food products.  The court declined to dismiss the action under the primary jurisdiction doctrine because "the letter from the FDA [in the

12

record] raises significant doubt in my mind about whether the FDA stands ready and willing to make some kind of case-specific determination that might advance the litigation here."[65]

We find these cases analogous and are persuaded by their reasoning. In the absence of agency action in those cases, courts either lifted a stay or refused to apply the primary jurisdiction doctrine based on evidence in the record of agency inaction on matters within its authority. We too are faced with no agency action in the Department of Labor's Letter declining the referral.

Farfield recognizes the "natural" cosmetic labeling cases from California's district courts holding futility of a referral, but contends those cases are distinguishable. Farfield first argues the Food and Drug Administration is "uninterested in weighing in" on the issue while the Department of Labor, by contrast, "routinely audits Davis-Bacon Act projects and worker classifications and rules on questions of misclassification."[66] Farfield's suggestion the Food and Drug Administration somehow does not "weigh in" on issues—in contrast to the Department of Labor—is pure speculation and is contrary to the FDA's explanation it declined, at least as of 2015, to determine the term "natural" because its "priority food public health and safety matters are largely occupying the limited resources that FDA has to address food matters."[67] Farfield argues the FDA cases are distinguishable because California federal courts "refused to apply primary jurisdiction to send the issue to the FDA for resolution" while Judge Stengel already determined primary jurisdiction applies. We disagree as to the distinction drawn by Farfield. Farfield is correct the California cases refused to apply the primary jurisdiction doctrine, but it is because of the futility in the doctrine's application. In those cases, the California courts had evidence of the Food and Drug Administration's position of, in essence, inaction. Unlike the California courts, Judge Stengel had no evidence and did not know, at the time of his decision, of the Department of Labor unwillingness to take the referral. Finally, Farfield asserts the "entire line of cases from California

13

may soon be rendered moot" because, in 2015, the "FDA announced its initiation of a regulatory proceeding to determine a definition of 'natural' as the term is used in consumer goods."[68] Since the FDA's announced regulatory proceedings on the definition of "natural," the Ninth Circuit instructs district courts should stay actions under the primary jurisdiction doctrine pending the FDA's determination.[69] We have no such administrative action by the Department of Labor here, in fact, we know it declined to take the referral.

### *The Department of Labor's Letter.*

Farfield additionally argues the Department of Labor's Letter demonstrates we should grant its motion to dismiss with prejudice the Union's amended complaint. Farfield contends the Department of Labor's Letter "confirmed" its audit in the Fall of 2004 did "not result in any finding of misclassification."[70] We reject this argument at the motion to dismiss stage. While there is evidence in the record Department of Labor audited three of the five projects in the Fall of 2004 and found only a holiday pay rate violation, any argument the audit demonstrates the Union's claims should be dismissed is more properly raised at the summary judgment stage.

Farfield additionally argues the Letter demonstrates the Department of Labor "made clear that it was not incapable of determining the complex classifications; rather it was unwilling," and "exercised its discretion and decided that this matter did not warrant a new investigation into the Davis-Bacon labor standards on the SEPTA Wayne Junction Project."[71] Farfield reasons if the Department of Labor decided in its discretion not to "re-investigate" worker classifications, it is not for us to determine. It warns Judge Stengel's concern for the "substantial danger of inconsistent rulings"—one of the factors in the *Baykeeper* test to determine whether the primary jurisdiction should apply—"remains real."[72]

14

We find this again misperceives the issue. The issue is not whether the primary jurisdiction

doctrine applies; Judge Stengel already ruled it did. The issue is the effect of the Department of

Labor's declination of the referral. At the time Judge Stengel analyzed whether the primary

jurisdiction doctrine should apply, referral had not been made to the Department of Labor. Neither

Judge Stengel nor the parties knew the Department of Labor would decline the referral. We now

know the Department declined the referral based on—according to Farfield—its "unwillingness"

to "re-investigate." We are left to wonder how there is any danger of "inconsistent rulings" when

the Department is not interested in resolving this issue. If, as Farfield argues, the Department of

Labor "already investigated the same issues during its 2004 audit, and the audit did not result in

any finding that Farfield misclassified its employees," where is the danger of an inconsistent

ruling? If the Department of Labor's 2004 audit is so conclusive, we anticipate Farfield will argue

it at summary judgment.

Finally, if we accept Farfield's argument, the Union is out of a remedy both here and in the

agency. Farfield provides us with no authority, and we can find none, to support such a result.

Accepting Farfield's argument, any time an administrative agency declines to take a referral under

the primary jurisdiction doctrine, a litigant would be out-of-court and without a remedy in any

venue. The primary jurisdiction doctrine is one of judicial abstention in deference to the agency

administering the regulatory scheme; it does not divest the federal courts of jurisdiction. And

where the agency, whether by inaction, inability, or unwillingness, does not determine an issue

within its expertise, the reasons for a court's stay of an action pending referral to the agency under

the primary jurisdiction doctrine no longer exists.

### C. We decline dismissing this action based on the Union's alleged "contempt" for the Court's referral order or its alleged "unclean hands."

Farfield argues we should not "excuse" the Union's "utter contempt" for Judge Stengel's September 26, 2017 Order referring the matter to the Department of Labor and we should "tak[e] into account" the Union's contempt when ruling on the motion to dismiss. Farfield also urges us to dismiss the amended complaint because the Union "mislead[] the Court about whether this case involves issues of complex classification ...."

While we are not pleased with the Union's inexplicable fourteen-month delay in making a referral to the Department of Labor made only after our request for a status update and another order directing it to make a referral, it is not a basis to dismiss the action under Rule 12(b)(6). Its inaction may prejudice its trial presentation but it created this delay.

### III. Conclusion

We deny Farfield's motion in the accompanying Order. As the parties have invested years into discovery, we will promptly set a trial date.

---

[1] 31 U.S.C. § 3729 *et seq.* The False Claims Act imposes liability on any person who, *inter alia*, "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" or "knowingly makes, uses or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. §3729(a)(1).

[2] 40 U.S.C. § 276(a) *et seq.* The Davis-Bacon Act applies to "contractors and subcontractors performing work on federally funded or assisted contracts in excess of $2,000 for the construction, alteration, or repair of public buildings or public works. Davis-Bacon Act contractors and subcontractors must pay their laborers and mechanics no less than the locally prevailing wages and fringe benefits for corresponding work on similar projects in the area." *Askew v. R.L. Reppert Inc.*, 721 F. App'x 177, 180, n.2 (3d Cir. 2017) (citing United States Department of Labor, Wage and Hour Division (WH) Davis Bacon and Related Acts, https://www.dol.gov/whd/govcontracts/dbra.htm (last visited Nov. 8, 2017)).

[3] ECF Doc. Nos. 16, 17, 30. Although it declined to intervene, the United States remains a party in interest.

⁴ Amended Complaint at ¶¶ 2-9 (ECF Doc. No. 30). The five projects are: Girard Avenue Infrastructure Renewal Project ("Girard Project"), PATCO Egress Lighting Project ("PATCO Project"), SEPTA Project 5004, Wayne Junction to Glenside and Signal Project ("Wayne Junction Project"), and SEPTA Project 5004, Smart Stations Project I and II ("SEPTA Projects"). ECF Doc. No. 30 at ¶ 14. Although not entirely clear when or where it narrowed its claims, it appears the Union now limits its claims solely to alleged violations on the Wayne Junction Project between 2001 and 2007. *See* ECF Doc. No. 165 at 1 (Union's argument if we dismiss the matter, "the workers on the Wayne Junction project" will be left without a remedy in any venue).

⁵ ECF Doc. No. 30 at ¶ 25.

⁶ ECF Doc. No. 30 at ¶¶ 32-35, 36.dd. The Union alleges the Davis-Bacon Act required Farfield to pay prevailing wages to its workers and to submit certified payrolls and "Certificate of Compliance" to SEPTA and PATCO on a weekly basis which in turn were submitted to the Federal Transit Administration. *Id.*

⁷ ECF Doc. No. 35.

⁸ ECF Doc. No. 35-1 at 11-13. Farfield additionally argued the False Claims Act does not apply to the contracts at issue; three of the five contracts at issue were the subject of a prior civil money penalty proceeding initiated by the Department of Labor divesting the court of subject matter jurisdiction; and the amended complaint fails to meet the pleading requirements of Fed.R.Civ.P. 8 and the heightened pleading standard for fraud. Farfield's current motion to dismiss does not raise these additional arguments. *See* ECF Doc. No. 162-1.

⁹ ECF Doc. No. 41 at 7-10.

¹⁰ ECF Doc. No. 41 at 7-8.

¹¹ *United States ex rel. Int'l B Bhd. of Elec. Workers, Local Union No. 98 v. The Farfield Co.*, No. 09-4230, 2013 WL 3327505 (E.D. Pa. July 2, 2013) ("*Farfield I*").

¹² *Id.* at *5.

¹³ *Id.* at * 5 (quoting *Charvat v. Echostar Satellite, LLC*, 630 F.3d 459, 466 (6ᵗʰ Cir. 2010)).

¹⁴ *Id.* at *7.

¹⁵ *Id.*

¹⁶ *Id.* at * 6.

¹⁷ ECF Doc. No. 136.

¹⁸ ECF Doc. No. 137.

[19] ECF Doc. No. 137 at 5.

[20] ECF Doc. No. 138.

[21] *United States ex rel. Int'l Bhd. of Elec. Workers, Local Union No. 98 v. The Farfield Co.*, No. 09-4230, 2017 WL 4269048 (E.D. Pa. Sept. 26, 2017) ("*Farfield II*").

[22] *Id.* at * 6 (citing *Farfield I*).

[23] *Id.* (citing *U.S. ex rel. Windsor v. Dyncorp Inc.*, 895 F. Supp. 844, 852 (E.D. Va. 1995)).

[24] Upon Judge Stengel's retirement, this case was reassigned to The Honorable Joseph F. Leeson, Jr. and then to our calendar. ECF Doc. Nos. 144, 146.

[25] ECF Doc. No. 149.

[26] ECF Doc. No. 150.

[27] ECF Doc. No. 152.

[28] ECF Doc. No. 154.

[29] ECF Doc. No. 155.

[30] ECF Doc. No. 156.

[31] ECF Doc. No. 157.

[32] ECF Doc. No. 160.

[33] ECF Doc No. 160-1.

[34] In September 2004, the Department of Labor audited Farfield's practices under the Davis-Bacon Act and other federal statutes after Farfield completed three of the five projects; the Girard Project, the PATCO Project, and the Wayne Junction Project. *Farfield II,* 2017 WL 4269048 at * 2. The audit revealed Farfield paid four employees at an incorrect rate for the Labor Day holiday amounting to $811.52 owed to the underpaid employees. *Id.* at *2, n.5

[35] ECF Doc. No. 160-1.

[36] ECF Doc. No. 161.

[37] ECF Doc. No. 162.

[38] ECF Doc. Nos. 163, 165. We granted the Union's motion and removed the case from our suspense docket and returned it the active trial docket. ECF Doc. No. 164.

[39] *Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 909-10 (9th Cir. 2019) (quoting *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008)).

[40] *Baykeeper v. NL Indus.*, 660 F.3d 868 (3d Cir. 2011) (quoting *U.S. v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956)).

[41] *Robles*, 913 F.3d at 910 (quoting *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 759 (9th Cir. 2015)).

[42] *Erie Ins. Exchange ex rel. Beltz v. Stover*, 619 F. App'x 118, 121 (3d Cir. 2015) (quoting *U.S. v. Phila. Nat'l Bank*, 374 U.S. 321, 353 (1963)).

[43] *Farfield II*, 2017 WL 4269048, at *5-*7. The four-factor test in *Baykeeper* inquires: "(1) Whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) Whether the question at issue is particularly within the agency's discretion; (3) Whether there exists a substantial danger of inconsistent rulings; and (4) Whether a prior application to the agency has been made." *Baykeeper*, 660 F.3d at 691 (quoting *Global Naps, Inc. v. Bell Atl.-N.J.*, 287 F. Supp. 2d 532, 549 (D.N.J. 2003)).

[44] *Id.* at*4, n.10 (citing *Ferrare v. IDT Energy, Inc.*, No. 14-4658, 2015 WL 3622883, at *3 (E.D. Pa. June 10, 2015)).

[45] ECF Doc. No. 162-1 at 2-5.

[46] For the same reason, Farfield's reliance upon *DynCorp, Inc.* is inapposite. We agree with the district court, and consistent with its reasoning, directed referral. But we are now at a different stage. In *DynCorp*, the court reviewed a False Claims Act claim under the Davis-Bacon Act. The court addressed whether the relator's claim alleging DynCorp intentionally misclassified, and thus underpaid, certain worker on projects billed to the Army violated the False Claims Act. The court granted summary judgment in favor of DynCorp because "it is impossible to determine whether DynCorp submitted a false claim to the government without first determining whether DynCorp actually misclassified an employee," and the "responsibility for resolving such disputes rests not with the courts, but with the Department of Labor." *DynCorp*, 895 F. Supp. at 851. The court reasoned the regulations regarding classification of workers "*must* be resolved according to the regulatory procedures set forth" and "a Davis-Bacon Act worker classification dispute, by itself, is not an [False Claims Act] claim because such disputes must be resolved by the Department of Labor." *Id.* If the misclassification claims went to a jury, it would "bypass[] the carefully crafted administrative scheme for resolving Davis-Bacon Act classification disputes." *Id.* at 852. Consistent with Judge Stengel's reasoning in this case, the fact both parties retained experts on the issue "underscores the wisdom in requiring classification disputes to be resolved in the administrative arena." *Id.* (footnote omitted). The court clarified it does not suggest Davis-Bacon Act violators "enjoy blanket immunity from FCA liability," and where a contractor makes a statement determined to be false without regard to complex Davis-Bacon Act classification regulations, such a violation may form the basis of an FCA claim.

[47] *Farfield II*, 2017 WL 4269048, at *5.

19

[48] *Id.* (citing *U.S. ex re. Wall v. Circle C. Constr., LLC*, 697 F.3d 345, 352 (6th Cir. 2012) (*rev'd on other grounds*) and *Erie Ins. Exch. ex rel. Beltz,* 619 F.App'x at 121-22)) (emphasis added).

[49] Farfield cites *In re N.J. Title Ins. Litig.*, 683 F.3d 451 (3d Cir. 2012) for support of its nonjusticiability argument. ECF Doc. No. 162-3 at 4. In this case, plaintiffs challenged New Jersey's title insurance rates under the Sherman Act and New Jersey's Antitrust Act. *N.J. Title Ins. Litig.* at 453. The district court dismissed plaintiffs' complaint under Fed.R.Civ.P. 12(b)(6) without leave to amend as futile. Affirming the district court, our Court of Appeals held antitrust suits challenging rates filed and approved by federal agencies are barred by the "filed rate doctrine." The filed rate doctrine "has its origins in … cases interpreting the Interstate Commerce Act," and "has been extended across the spectrum of regulated utilities." *Id.* at 455 (quoting *Ark. La. Gas Co. v. Hall*, 453 U.S. 571, 577 (1981)). Our Court of Appeals explained the doctrine "is designed to advance two 'companion principles': (1) 'preventing carriers from engaging in price discrimination as between ratepayers,' and (2) 'preserving the exclusive role of … agencies in approving rates … by keeping courts out of the rate-making process,' a function that 'regulatory agencies are more competent to perform.'" *Id.* (quoting *Marcus v. AT&T Corp.*, 138 F.3d 46, 58 (2nd Cir. 1988)). The second principle is called the "nonjusticiability strand" which recognizes the "institutional competence" of regulatory bodies to "address rate-making issues"; the "lack of competence" of courts to set rates; and "the interference by courts in rate-making processes would subvert the authority of rate-setting bodies and undermine the regulatory scheme." *Id.* at 456 (quoting *Sun City Taxpayers' Assoc. v. Citizens Utils. Co.*, 45 F.3d 58, 62 (2d Cir. 1995)). Our Court of Appeals applied the nonjusticiability strand to plaintiffs' claims.

The nonjusticiability argument derived from the filed rate doctrine is inapplicable here. Farfield does not provide us with authority importing the "nonjusticiability strand" of the filed rate doctrine into a primary jurisdiction analysis.

[50] 783 F.3d 753 (9th Cir. 2015).

[51] *Id.* at 755.

[52] *Id.* at 760.

[53] *Id.*

[54] *Id.* at 761.

[55] *Id.* (citation omitted).

[56] *Id.* at 762.

[57] *Astiana v. Hain Celestial Grp., Inc.*, No. 11-6342, 2015 WL 13333579 (N.D. Cal. Oct. 9, 2015).

[58] *Id.* at * 2.

[59] *Id.* The district court ultimately granted the stay pending resolution of two cases before the Ninth Circuit. *See also Pecanha v. The Hain Celestial Grp., Inc.*, No. 17-4517, 2018 WL 534299, at *6 (N.D. Cal. Jan. 24, 2018) (declining to stay proceedings in a "natural" cosmetics case under the primary jurisdiction doctrine where FDA action is not "reasonably anticipated in the near future") (collecting cases).

[60] *In re: Kind LLC "Healthy and All Natural" Litigation*, No. 15-2645, 2019 WL 542834 (S.D.N.Y. Feb. 11, 2019).

[61] *Id.* at *1.

[62] *Id.* at *2 (citing *In re Kind*, 287 F.Supp. 3d 457, 470 (S.D.N.Y. 2018)).

[63] *Id.* at *4.

[64] *Patane v. Nestlé Waters N. Am., Inc.*, No. 17-1381, 2019 WL 1398052 (D.Conn. Mar. 28, 2019).

[65] *Id.* at *3.

[66] ECF Doc. No. 154-2 at 6.

[67] *Astiana*, 783 F.3d at 761 (quoting letter from Department of Health and Human Services in another litigation explaining its reasons for declining to determine the term "natural" in cosmetics labeling).

[68] ECF Doc. No. 154-2 at 6, n. 3.

[69] *See e.g., Kane v. Chobani, LLC*, 645 F. App'x 593 (9th Cir. 2016).

[70] ECF Doc. No. 162-1 at 2.

[71] *Id.* at 2, 4.

[72] *Id.* at 3 (citing *Farfield II*, 2017 WL 4269048, at * 7).