### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel* INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNION NO. 98 | : : : : : | CIVIL ACTION |
| v. | : : | NO. 09-4230 |
| THE FARFIELD COMPANY | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                                    **August 26, 2019**

      Years after restoring a railroad track under a contract with Southeastern Pennsylvania Transit Authority partially funded by the United States, a contractor is now answering claims it did not pay forty-two of its groundmen employees at the prevailing wage required by the Department of Labor for the electrical services they provided well over a decade ago. An electricians' union filed this False Claims Act claim alleging the contractor submitted false certified payrolls and certificates of compliance to the municipal authority by having its groundmen employees—who are neither classified as nor paid by the contractor as journeymen electricians—perform journeyman electrical work beyond simply assisting the journeymen. Before proceeding to a bench trial, the contractor seeks summary judgment arguing the union's misclassification, liability and damages theories are disproved by its own witnesses, some of its claims are barred by the statute of limitations and, in any case, the contractor did not submit a record or statement for payment by the federal government and it did not knowingly submit a false claim. Genuine issues of material fact regarding the work groundmen performed individually preclude summary judgment. But we now write to principally address the ability to challenge

claims made to a municipal authority before Congress amended the False Claims Act to allow recovery for these claims.

I.      **Undisputed facts material to summary judgment.**[1]

The Farfield Company is a construction contractor.[2] In 2001, Farfield contracted with the Southeastern Pennsylvania Transportation Authority ("SEPTA")[3] for work on five federally funded projects improving Philadelphia-area transit systems, including under a March 15, 2002 contract between Farfield and SEPTA for the Wayne Junction to Glenside Project ("Wayne Junction Project" or "Project").[4] Through the Project, SEPTA sought to improve a seven-and-a-half mile stretch of railroad track between Wayne Junction and the Glenside train station.[5]

As required by the Davis-Bacon Act,[6] the contract between Farfield and SEPTA provided in relevant part:

- "[a]ll laborers and mechanics employed or working upon the site of the work ... will be paid unconditionally ..., the full amount of wages and bonafide [sic] fringe benefits (or cash equivalents thereof) due at time of payment computed at rates not less than those contained in the wage determination of the Secretary of Labor which is attached hereto and made part hereof, regardless of any contractual relationship which may be alleged to exist between the Contractor and such laborers and mechanics."

- "[s]uch laborers and mechanics shall be paid the appropriate wage rate and fringe benefits on the wage determination for the classification of work actually performed, without regard to skill, ...."

- "[l]aborers or mechanics performing work in more than one classification may be compensated at the rate specified for each classification for the time actually worked therein: provided, that the employer's payroll records accurately set forth the time spent in each classification in which work is performed."[7]

At some point after Farfield began working on the Wayne Junction Project in 2002, the International Brotherhood of Electrical Workers Local Union No. 98 "engaged in an investigation concerning Farfield's practices"[8] allegedly undercovering a scheme of under-bidding prevailing wage projects by classifying workers at lower hourly wages in violation of the Davis-Bacon Act.[9]

2

Local 98 alleges Farfield had its groundmen perform skilled electrician work but paid them at a lower, unskilled work rate rather than the rate for skilled electrical work.

The parties cite many worker classifications: groundman, laborer, lineman, journeyman lineman, journeyman indoor wireman, journeyman outdoor lineman, foreman indoor wireman, apprentice indoor wireman, and journeyman electrician. The parties do not clearly explain the differences between the dizzying array of positions. Notwithstanding the various classifications, Local 98 conceded at oral argument we may divide workers into two buckets: groundmen and laborers in one bucket and linemen, journeymen, foremen, wiremen, and apprentices in the other bucket. It appears the distinction is based on experience in the electrical field.

In September 2004, two years into Farfield's work on the Project, the United States Department of Labor audited Farfield's classification of its workers.[10] There is no dispute the Department of Labor found four carpenters should have been paid at a higher prevailing rate on the Project totaling $811.52 which Farfield paid.[11] Farfield contends the Department of Labor found no violation of its classification of employees as laborers, groundmen, linemen, and electricians, citing a 2012 affidavit of John Kleimo, Farfield's Vice President and Secretary.[12] Local 98 disputes this, arguing "[t]he record does not contain any admissible evidence indicating" the Department of Labor's finding and "there is no admissible record evidence addressing the scope, extent or focus of the DOL's investigation."[13]

Almost ten years ago, Local 98 filed a sealed *qui tam* complaint alleging Farfield's scheme to intentionally pay its workers wages lower than required by the Davis-Bacon Act and then submit claims to the federal government for payment based on certifications it complied with the Davis-Bacon Act violated the False Claims Act, 31 U.S.C. § 3729 *et seq.*

3

Two years later, the United States declined to intervene in the action. The court unsealed the complaint. Local 98 filed an amended complaint on February 3, 2012.[14] In its amended complaint, Local 98 again alleged Farfield intentionally and knowingly misclassified workers performing electrician's work to gain a competitive bidding advantage on the same federally funded construction projects between 2001 and 2009.[15] Local 98 alleges Farfield submitted fraudulent certified payroll records intending those documents to be material in the federal government's decision to pay the false claims violating the False Claims Act, 31 U.S.C. § 3729(a)(1)(B).[16]

After motion practice and years of discovery including the appointment of a special discovery master to handle discovery disputes, the Clerk of Court assigned this matter to us in late September 2018. We directed a second round of motion practice on the issue of the Department of Labor's jurisdiction under the primary jurisdiction doctrine and, after finding we could proceed to resolve this case, we issued a scheduling order setting the parties' pre-trial obligations and a trial date.[17]

**II.  Analysis.**

Farfield now moves for summary judgment arguing: (1) Local 98's own witnesses and evidence disprove their misclassification, liability and damages theories; (2) Farfield submitted its bills to SEPTA, not the United States Government as required by the False Claims Act at the relevant time before 2008; (3) Farfield did not knowingly submit a false claim; and (4) some of Local 98's claims are barred by the applicable statute of limitations.[18]

Local 98 responds (1) the record shows Farfield falsely certified compliance with the Davis-Bacon Act; (2) the amended False Claims Act applies to bills submitted to SEPTA; (3) Farfield's reliance on the Department of Labor's 2004 audit is not relevant to its state of mind and

4

the question of whether it knowingly submitted a false claim is a question for trial; and, (4) the statute of limitations does not bar its claims.

### A. The Davis-Bacon Act applies under the False Claims Act.

The wage rate requirements of the Davis Bacon Act apply to "every contract in excess of $2,000, to which the Federal Government or the District of Columbia is a party, for construction, alteration, or repair, including painting and decorating, of public buildings and public works of the Government or the District of Columbia that are located in a State or the District of Columbia and which requires or involves the employment of mechanics or laborers ...."[19] Every such contract "shall contain a provision stating the minimum wages to be paid various classes of laborers and mechanics" and "minimum wages shall be based on the wages the Secretary of Labor determines to be prevailing for the corresponding classes of laborer and mechanics employed on projects of a character similar to the contract work in the civil subdivision of the State in which the work is to be performed ...."[20]

A claim under the False Claims Act may be predicated on an alleged violation of the Davis-Bacon Act.[21] Local 98 alleges Farfield misclassified its groundmen workers in violation of the Davis-Bacon Act and then submitted fraudulent certified payrolls for payment by the federal government under the False Claims Act, 31 U.S.C. § 3729(a)(1)(B), making "any person who – knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim ... liable to the United States Government for a civil penalty ... plus 3 times the amount of damages which the Government sustains because of the act of that person."[22]

### B. The False Claims Act applies even though Farfield performed work under a contract with SEPTA.

We begin with a potentially dispositive question of law. Farfield argues it is entitled to summary judgment because it submitted bills for payment to SEPTA which is not the federal

government. Farfield argues it did not submit "a false record or statement to get a false or fraudulent claim paid or approved by the Government" as required by the language of the False Claims Act before its amendment in 2009. We are persuaded by recent authority to apply the False Claims Act as amended in 2009.

Before May 2009, section 3729(a)(1) and (2) of the False Claims Act imposed liability on "any person who ... (1) knowingly presents, or causes to be presented, *to an officer or employee of the United States Government or a member of the Armed Forces of the United States* a false or fraudulent claim for payment or approval;" or "(2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim *paid or approved by the Government*."[23]

To resolve a split in the circuit courts, the Supreme Court granted certiorari to resolve the proper interpretation of section 3729(a) of the False Claims Act and, in its June 9, 2008 *Allison Engine* decision, held a defendant must make a false record or statement "to get" a false or fraudulent claim "paid or approved by the Government."[24] The Court held "a defendant must intend that the Government itself pay the claim"; and "is not the same as getting it paid using 'government funds.'"[25] The Court reasoned "eliminating this element of intent ... would expand the FCA well beyond its intended role of combating 'fraud against the *Government*.'"[26]

In response to *Allison Engine*, Congress enacted the Fraud Enforcement Recovery Act of 2009 ("FERA")[27] amending, *inter alia*, section 3729 of the False Claims Act. FERA struck language from the False Claims Act requiring presentation "to an officer or employee of the United States Government or a member of the Armed Forces of the United States" and the language "to get a false or fraudulent claim paid or approved by the Government." As amended by FERA, the False Claims Act now reads, *inter alia*, "any person who – (A) knowingly presents, or causes to

6

be present, a false or fraudulent claim for payment or approval; [or] (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; ... is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000 ... plus 3 time the amount of damages which the Government sustains because of the act of that person."[28]

Congress made FERA effective "as if enacted on June 7, 2008"—two days before the Supreme Court's *Allison Engine* decision—and applicable *"to all claims under the False Claims Act* (31 U.S.C. 3729 *et seq.) that are pending on or after that date*; ..."[29] Importantly, when referring to the retroactivity of section 3731(b), Congress applied it *"to cases* pending on the date of enactment."[30]

The question today is which version of the False Claims Act applies to Local 98's claim; the pre-FERA version or the post-FERA version? The answer turns on the interpretation of the word "claims." There is no dispute SEPTA made its final payment to Farfield on December 6, 2007, well before the effective date of FERA, for work on the Wayne Junction Project.[31] And there is no dispute Local 98 filed its original complaint on September 17, 2009, three months after the effective date of FERA.

Farfield argues FERA does not apply here and it has no liability under the pre-FERA version of the False Claims Act. To be liable under the pre-FERA version of the False Claims Act, claims must be presented to the federal government for payment and, as Farfield argues, SEPTA is not the federal government, and the use of federal funds on the Project is not sufficient for pre-FERA False Claims Act liability. To support its argument, Farfield points to section 3729 defining a "claim" as "any request or demand, whether under a contract or otherwise, for money or property ...."[32] So, argues Farfield, when Congress made FERA effective June 7, 2008 and

7

made it applicable to "all claims under the False Claims Act ... that are pending on or after that date," Congress meant "claim" to mean a request or demand for money. Congress did not intend the word "claim" to mean a lawsuit or "case" and we must assume Congress would have written the words "all *cases* under the False Claims Act ... that are pending on or after" June 7, 2008 if it so intended.

When addressing Farfield's 2013 motion to dismiss arguing applying FERA violates the Ex Post Facto Clause of the Constitution, Judge Stengel held FERA's amendments to section 3729(a)(2) applied to all pending *cases* arising under the False Claims Act pending on or after June 7, 2008.[33] Farfield again challenges FERA's application, but not under the Ex Post Facto Clause. It instead argues the term "claim" means a demand for money, not a case or lawsuit.

Although our Court of Appeals has not determined this issue, Farfield cites three cases within this Circuit interpreting "claims" as demands for money, not cases under the False Claims Act: a 2010 decision from the United States District Court for the District of New Jersey;[34] a 2010 decision from the United States District Court for the Western District of Pennsylvania;[35] and a 2012 decision from this district.[36]

We are persuaded by the more recent expansive reasoning of the United States Court of Appeals for the Sixth[37] and Seventh Circuits[38] holding the word "claim" in FERA's section 4(f)(1) refers to a civil action or case pending on or after June 7, 2008. The cases cited by Farfield from within this district were decided before *Garbe* and the third, *Spay*, does not address *Sanders*.

In *Sanders*, the United States Court of Appeals for the Sixth Circuit considered the language of FERA applying the rules of statutory construction; Congress's intent evidenced by the statute's language; and the Senate Report accompanying FERA and particularly its reference to "'FCA cases" and two instances where the Senate Report uses the term "claim" to mean an FCA

8

case creating inconsistent terminology weakening the import of the Senate Report. The Sixth Circuit recognized "the strongest argument in favor of reading 'claims' in § 4(f)(1) [of FERA] to mean a demand for payment is the structure of FERA itself" and Congress's use of the word "cases" in nearby section § 4(f)(2).[39] Nevertheless, the Sixth Circuit concluded "using the technical definition in context ('claims under the False Claims Act') provides a strained reading, and therefore it is not appropriate to import the statutory definition of 'claim'—which applies for purposes of § 3729—into § 4(f). The fact that the two parts of § 4(f)'s exceptions to the effective date of FERA's amendments to the FCA were not drafted simultaneously reduces the strength of the structural argument. The use of 'claims' elsewhere in the statute when the clear meaning is 'cases' buttresses our conclusion. Consulting precedent and legislative history failed to further illuminate our analysis."[40]

The United States Court of Appeals for the Seventh Circuit in *Garbe* reached the same conclusion. In *Garbe*, defendant contractor argued the pre-FERA statute covered only requests for reimbursements pending on or after June 7, 2008, not relator's case. The Court of Appeals, relying on its earlier decisions, the *Sanders* decision from the United States Court of Appeals for the Sixth Circuit as well as decisions from the United States Courts of Appeals for the Second and Fifth Circuits, held "claims" in FERA's section 4(f)(1) means "case" not individual requests for payments.[41] The court in *Garbe* reasoned this "interpretation ... best reflects the text and structure of the statute" and it "makes no sense" to construe "claims" to mean "requests for payment."[42] The court explained "[t]here is no such thing as a request or demand for payment under the False Claims Act" and construing FERA as retroactive only for requests for payment "is also in tension with Congress's state goal of changing *Allison Engine's* interpretation of § 3729(a)" because Congress made FERA retroactive to two days before *Allison Engine* to "eliminate the approach

9

taken in *Allison Engine* without reopening judgments that were already final when *Allison Engine* was decided."[43] The court rejected the contractor's argument the False Claims Act's definition of "claim"— "any request or demand ... for money"—should control, explaining Congress's "free use of 'claim' (along with 'action') to mean 'civil action' throughout the FCA further support the argument that § 4(f)(1) was not meant to incorporate the definition in § 3729(b)(2)(A)."[44]

Persuaded by the reasoning of *Sanders* and *Garbe*, we conclude the False Claims Act as amended by FERA applies to Local 98's case and deny summary judgment on this ground.

### C. The statute of limitations does not bar Local 98's claims.

Farfield seeks summary judgment on part of Local 98's claims as barred by the statute of limitations in the False Claims Act. Section 3731(b) of the False Claims Act provides "[a] civil action under section 3730 may not be brought – (1) more than 6 years after the date on which the violation of section 3729 is committed, or (2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed, whichever occurs last."[45]

Farfield argues the statute of limitations bars all claims before September 18, 2003 because the United States did not file a complaint in this action; under § 3731(b)(2), the United States "had sufficient knowledge" no later than September 21, 2011 (the date it declined to intervene in this action) of the facts material to a right of action; the latest the United States could have filed a complaint under § 3731(b)(2) is September 20, 2014, three years from September 21, 2011; if the United States had filed a complaint by September 20, 2014, it would have related back under § 3731(c) to Local 98's complaint first filed on September 17, 2009; and because § 3731(b)(1) requires Local 98 to file a complaint within six years of a violation of § 3729, the "scope of the

10

suit goes back" to September 18, 2003 and the statute of limitations bars any claims against Farfield before September 18, 2003.

Local 98 responds under a recent Supreme Court decision, a relator is not "the official of the United States" triggering a three-year statute of limitations period.[46] Local 98 filed its complaint on September 17, 2009, seven years after Farfield's first violation in September 2002 and is timely under the limitations period of § 3731(b)(2).

In *Conchise*, the Supreme Court held the limitations period in § 3731(b)(2) is applicable to relator's action even where the United States declines to intervene.[47] The Court rejected defendant's argument reading § 3731(b) as to provide both sections (1) and (2) to a relator's action where the United States does not intervene leads to "counterintuitive results," finding "if the Government discovers the fraud on the day it occurred, it would have 6 years to bring suit, but if a relator instead discovers the fraud on the day it occurred and the Government does not discover it, the relator could have as many as 10 years to bring the suit" under § 3731(b)(2).[48]

Local 98 filed suit on September 17, 2009 claiming Farfield violated the False Claims Act beginning in September 2002, within the ten-year limitations period of § 3731(b)(2) applicable to relators under *Conchise*. We deny summary judgment on the statute of limitations.

### D. Fact issues preclude summary judgment on Local 98's misclassification theory.

After full briefing and a 2,000 page Appendix, Local 98's theory of liability in this case remained unclear until oral argument. After considerable back and forth, we finally drilled down to Local 98's claim. The parties agreed groundmen assisting journeymen may be paid at the groundmen rate and not run afoul of the Davis-Bacon Act. Local 98 conceded there is no violation of the Davis-Bacon Act, and derivatively the False Claims Act, if Farfield paid groundmen at the groundmen rate (and not at the higher journeyman rate) for work "assisting" journeymen in

11

performance of electrical tasks. Farfield contends Local 98 produced no evidence in response to summary judgment showing groundmen performed electrical work ***without*** a journeyman present and we should assume groundmen "assisted" journeymen.

Under Rule 56, Farfield has the burden of showing "there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law."[49] "A fact is 'material' if its existence or nonexistence 'might affect the outcome of the suit under the governing law.'"[50] "A dispute of material fact is 'genuine' if 'a reasonable jury could return a verdict for'" Farfield.[51] Farfield, as the moving party, carries "the burden of identifying specific portions of the record that establish the absence of a genuine dispute of material fact."[52] Again, Farfield's argument is Local 98 failed to provide evidence—by way of affidavit or other evidence—groundmen performed electrical work on their own and not assisting a journeyman.

Local 98 disagrees. At oral argument, Local 98 pointed to the report of its expert Thomas Leach who opined on assistance and the type of electrical tasks groundmen may not perform alone.[53] Mr. Leach opines groundmen "are effectively 'helpers,' whose sole function on a worksite is to assist a lineman by performing menial, unskilled tasks, such as handing over tools, moving supplies and diving vehicles ...."[54] Mr. Leach opines "[a] groundman may not perform any electrical tasks" and, "[a]t most, a groundman may *assist* a journeyman lineman in his performance of certain electrical task [sic] if done under the direct and proximate supervision of the lineman."[55]

Mr. Leach opined tasks such as laying of conduit, bending conduit, and "wire pull" require skill and training not possessed by a groundman and may only be performed by apprentice and journeymen linemen.[56] Local 98 cites statements from its witnesses, particularly paragraph 212 of its Statement of Additional Facts precluding summary judgment, where groundmen and laborers testified they performed electrical work on the Project.[57] Paragraph 212 contains subparagraphs

12

with deposition testimony of groundmen who testified of "gluing on other pieces of conduit," "bending conduit," and "installing conduit."[58]

Construing the evidence in the light most favorable to Local 98 as we must on summary judgment, there is a genuine issue of material fact regarding the type of work groundmen performed and whether they "assisted" journeymen in identified work precluding summary judgment. We do not know what "assist" means; we do not know how one or more of the groundmen performed these services. Did they assist or do the work without supervision? We do not know how Local 98 intends to prove the day-to-day work effort at least on a *prima facie* basis. We do not today decide the relative burdens of proof at trial. But we cannot decide in favor of Farfield based on this genuinely disputed record. The material facts concerning the groundmen's activities are challenged by testimony suggesting performing work possibly beyond assisting the journeyman.

### E. Fact issues preclude summary judgment on Farfield's intent to submit a false claim.

Farfield argues it is entitled to summary judgment because it did not knowingly submit a false claim because (1) Local 98's own witnesses testified groundmen can assist linemen in all work and because Farfield paid at least one employee at the higher journeyman rate for 99.6% of the time, it cannot have intentionally or reckless misclassified employees as groundmen and (2) the Department of Labor's 2004 audit of Farfield found no classification issue. For these reasons, argues Farfield, it did not have the requisite scienter under the False Claims Act.

Local 98 responds the Department of Labor's 2004 audit does not support Farfield's scienter argument because there is no evidence of the audit's scope and Farfield's state of mind in relying on the audit is a question for trial.

13

A False Claims Act violation has four elements: "falsity, causation, knowledge, and materiality."[59] To establish a violation of section 3729(a)(1) of the False Claims Act, a plaintiff must prove "(1) the defendant presented or caused to be presented to an agent of the United States a claim for payment; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent."[60] Under section 3729(b), the terms "knowing" and "knowingly" "(A) mean that a person, with respect to the information - (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information; and (B) require no proof of specific intent to defraud ...."[61] Local 98 contends Farfield recklessly disregarded its duty to classify groundmen.[62]

As identified above, there are fact questions regarding whether groundmen assisted journeymen in electrical work or whether groundmen performed electrical work without journeymen. These fact questions preclude summary judgment on whether Farfield knew claims presented for payment were false or fraudulent.

## III. Conclusion.

In the accompanying Order, we deny Farfield's motion for summary judgment. Issues of fact will be resolved at our upcoming bench trial.

---

[1] Our Policies require a Statement of Undisputed Material Facts ("SUMF") and an appendix in support of summary judgment. Farfield prepared an appendix (ECF Doc. No. 182-5 through 182-33) to which Local 98 added documents (ECF Doc. No. 184-4 through 184-6). References to the appendix are by Bates number, for example, "1a." Farfield filed its Motion for summary judgment and supporting memorandum of law at ECF Doc. No. 182 and 184-1 and its SUMF at ECF Doc.

14

No. 182-2 ("Farfield's SUMF"). Local 98 filed its response at ECF Doc. No. 182-1 and its response to Farfield's SUMF and Statement of Additional Facts precluding summary judgment ("Local 98 SUMF") at ECF Doc. No. 184. Farfield responded to Local 98's Statement of Additional Facts (ECF Doc. No. 188).

[2] Farfield SUMF at ¶ 1 (ECF Doc. No. 182-2).

[3] SEPTA is a municipal authority operating transit and rail services in Philadelphia and its metropolitan area. *Id.* at ¶ 6.

[4] Farfield SUMF at ¶¶ 7–9 (ECF Doc. No. 182-2). At the beginning of this litigation, Local 98 claimed Farfield's conduct with regard to five federally funded programs violated the False Claims Act. Local 98 voluntarily moved to dismiss with prejudice its claims as to four of the five projects, leaving the Wayne Junction Project the only remaining claim. We granted the motion and dismissed all claims except for the Wayne Junction Project. *See* ECF Doc. No. 173.

[5] Farfield SUMF at ¶ 10 (ECF Doc. No. 182-2).

[6] 40 U.S.C. § 3142. In 2002, the Davis-Bacon Act was codified at 40 U.S.C. § 276a.

[7] Farfield SUMF at ¶¶ 64–66 (ECF Doc. No. 182-2); Appendix 42a (ECF Doc. No. 182-7).

[8] ECF Doc. No. 30 at ¶ 25.

[9] 40 U.S.C. § 3142 (formerly 40 U.S.C. § 276a).

[10] Farfield SUMF at ¶ 181 (ECF Doc. No. 182-2).

[11] *Id.* at ¶ 187.

[12] *Id.* at ¶ 186; Appendix 361a at ¶ 12 (ECF Doc. No. 182-14).

[13] Local 98 Response to SUMF at ¶ 186 (ECF Doc. No. 184).

[14] ECF Doc. Nos. 16, 17, 30.

[15] ECF Doc. No. 30 at ¶¶ 2-9.

[16] *Id.* at ¶ 40.

[17] ECF Doc. No. 171.

[18] Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return

a verdict for the non-moving party.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011)). On a motion for summary judgment, "we view the facts and draw all reasonable inferences in the light most favorable to the nonmovant." *Pearson*, 850 F.3d at 533-34 (3d Cir. 2017) (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)). "The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." *Willis*, 808 F.3d at 643 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Willis*, 808 F.3d at 643 (citing *Celotex Corp.*, 477 U.S. at 322-323).

[19] 40 U.S.C. § 3142(a).

[20] *Id.* at § 3142(b).

[21] *Found. for Fair Contracting, Ltd. v. G & M Eastern Contracting & Double E, LLC*, 259 F.Supp.2d 329, 339 (D.N.J. 2003) (footnote omitted); *United States ex rel. Wall v. Circle C Constr., LLC*, 697 F.3d 345 (6th Cir. 2012); *United States ex rel. Plumbers and Steamfitters Local Union No. 38 v. C.W. Roen Const. Co.*, 183 F.3d 1088 (9th Cir. 1999).

[22] 31 U.S.C. § 3729(a)(1)(B).

[23] 31 U.S.C. § 3729(a) (1994) (emphasis added). In its previous version, section 3729(a)(1) and (2) provided:

> Any person who –
>
> (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;
>
> (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;
>
> ...
>
> is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person ...

[24] *Allison Engine Co., Inc. v. United States ex rel. Sanders*, 553 U.S. 662, 667-68 (2008).

[25] *Id.* at 668.

[26] *Id.*

[27] Pub. L. No. 111-21, 123 Stat. 1617 (2009).

[28] 31 U.S.C. § 3729(a)(1)(A), (B).

[29] Pub. L. No. 111-21, 123 Stat. 1617 at § 4(f)(1) (emphasis added).

[30] *Id.* at § 4(f)(2) (emphasis added).

[31] Farfield SUMF at ¶ 178 (ECF Doc. No. 182-2).

[32] 31 U.S.C. § 3729(b)(2).

[33] ECF Doc. No. 47 at n. 24.

[34] *United States v. Albinson*, No. 09-1791, 2010 WL 3258266, at *9 (D. N.J. Aug. 16, 2010).

[35] *U.S. Dept. of Transp. ex rel. Arnold v. CMC Engineering*, 745 F.Supp. 2d 637, 646 n.7 (W.D. Pa. 2010).

[36] *U.S. ex rel. Spay v. CVS Caremark Corp.*, 913 F.Supp. 2d 125, n.30 (E.D. Pa. 2012), aff'd on other grounds, 875 F.3d 746 (3d Cir. 2017).

[37] *Sanders v. Allison Engine Co., Inc.*, 703 F.3d 930, 936-38 (6th Cir. 2012).

[38] *U.S. ex rel. Garbe v. Kmart Corp.*, 824 F.3d 632, 639-41 (7th Cir. 2016).

[39] *Id.* at 941–42.

[40] *Id.*

[41] *Garbe*, 824 F.3d at 639–40 (citing *Sanders*, 703 F.3d at 942; *United States ex rel. Kirk v. Schindler Elevator Corp.*, 601 F.3d 94, 113 (2d Cir. 2010), *rev'd on other grounds*, 563 U.S. 401 (2011); and *United States ex rel. Rigsby v. State Farm Fire & Cas. Co.*, 794 F.3d 457, 465 (5th Cir. 2015)).

[42] *Garbe*, 824 F.3d at 640.

[43] *Id.*

[44] *Id.* at 641.

[45] 31 U.S.C. § 3731(b).

⁴⁶ *Conchise Consultancy, Inc. v. United States ex rel. Hunt*, – U.S. –, 139 S.Ct. 1507, 203 L.Ed.2d 791 (2019).

⁴⁷ *Id.* at 1512-13.

⁴⁸ *Id.* at 1513.

⁴⁹ Fed. R. Civ. P. 56(a).

⁵⁰ *Montville Twp. Bd. of Educ. v. Zurich Am. Ins. Co.*, No. 18-3073, 2019 WL 3384829, at *3 (3d Cir. July 26, 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

⁵¹ *Id.*

⁵² *Id.*

⁵³ Appendix 1182a–1189a (ECF Doc. No. 184-5).

⁵⁴ *Id.* at 1184a.

⁵⁵ *Id.*

⁵⁶ *Id.* at 1186a–1187a.

⁵⁷ Local 98 Statement of Additional Facts at ¶ 212 (ECF Doc. No. 184).

⁵⁸ *Id.*

⁵⁹ *United States ex rel. Doe v. Heart Solution, P.C.*, 923 F.3d 308, 317 (3d Cir. 2019) (quoting *United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 487 (3d Cir. 2017)).

⁶⁰ *United States ex rel. Schmidt v. Zimmer, Inc.*, 386 F.3d 235, 242 (3d Cir.2004) (quoting *Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 182 (3d Cir. 2001)).

⁶¹ 31 U.S.C. § 3729(b)(1).

⁶² Local 98 Statement of Additional Facts at ¶¶ 255-283 (ECF Doc. No. 184).