IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNION NO. 98 | : : : : : | CIVIL ACTION |
| v. | : : | NO. 09-4230 |
| THE FARFIELD COMPANY | : | |

# MEMORANDUM

**KEARNEY, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　**October 15, 2019**

A union is presenting evidence to our Special Master seeking to prove damages owed to the United States under the False Claims Act arising from a contractor's misclassification of workers on a construction project completed over ten years ago partially funded by the United States. The union claims the contractor paid forty-two men at the lower groundmen or laborer rate for electrical work they performed which should have been paid at the higher journeyman electrician rate. The union relies upon the contractor's "phase code" time sheets produced in discovery and the recollection of fourteen working men. The union seeks to recover damages based on the misclassification of services provided by the forty-two men. The employer's records consist of the phase code time sheets. The question is how does the union prove these damages for the forty-two allegedly misclassified workers absent all forty-two men testifying as to their workdays over ten years ago? The union asks we impose a higher burden on the employer where it fails to keep employment records as required by the Fair Labor Standards Act and Davis-Bacon Act when employees have no way to establish the time spent doing uncompensated work. The contractor argues this burden shifting applied in the Fair Labor Standards Act context does not apply in this False Claims Act case.

On September 6, 2019, we deferred deciding the burden of proof issues on damages to allow further briefing. The parties briefed the issue but elected not to wait for our ruling and instead began presenting facts to the Special Master who will continue hearing evidence next week and file findings of fact and conclusions of law by November 15, 2019. We agree whether this burden shifting applies is a narrow issue depending on the Special Master's fact findings. But like most *in limine* holdings, we need to provide the evidentiary roadmap for counsel and for the Special Master's conclusions of law in this case. We need not address damages if the Special Master finds the contractor did not violate the False Claims Act through misclassification of the forty-two groundmen and laborers at issue. We also do not need to address this burden shifting issue if he finds the contractor's phase code time sheets accurately describes electrical work performed by groundmen and laborers. We also do not reach the issue if the Special Master finds the phase code time sheets and other evidence such as photographs and foremen's daily reports accurately describe the work—electrical or not—performed by the groundmen or laborers. The burden shifting only comes into play if the Special Master finds the contractor liable under the False Claims Act and, reaching the question of damages, determines the phase code timesheets and other evidence do not accurately describe the work performed by the groundmen and laborers for all hours of work on any given day.

The Special Master must assess the evidence and determine whether each party met its burden. If he finds the union meets its burden based on the phase code timesheets or other evidence, and the contractor fails to sufficiently impeach this evidence or show the phase codes do not tell the whole story, then the Special Master may evaluate an award of damages owed to the United States for the forty-two misclassified workers "even though the result be only approximate."[1]

## I. Background[2]

In 2001, construction contractor Farfield Company contracted with the Southeastern Pennsylvania Transportation Authority ("SEPTA") to improve a seven-and-a-half mile stretch of railroad track between Wayne Junction and the Glenside train station. Farfield's contract with SEPTA required it to abide by Federal Transit Administration regulations including maintaining "payrolls and basic records" and worker classification under the Davis-Bacon Act.[3] The contract required Farfield to submit certified weekly payrolls to SEPTA for transmission to the Federal Transit Administration.[4] The parties agreed falsification of a certification may subject the contractor Farfield to civil or criminal prosecution under the False Claims Act.[5]

At some point after Farfield began working on the Wayne Junction Project in 2002, the International Brotherhood of Electrical Workers Local Union No. 98 believed it uncovered a scheme by Farfield of under-bidding prevailing wage projects by classifying workers at lower hourly wages on the Wayne Junction Project in violation of the Davis-Bacon Act.[6] Local 98 claimed Farfield had its groundmen and laborers perform skilled electrician work but paid them at a lower, unskilled work rate rather than the rate for skilled electrical work.

In 2009, Local 98 filed a sealed *qui tam* complaint alleging Farfield violated the False Claims Act, 31 U.S.C. § 3729 *et seq.* by intentionally paying its workers wages lower than required by the Davis-Bacon Act and then submitting claims to the federal government for payment based on certifications it complied with the Davis-Bacon Act. Two years later, the United States declined to intervene in the action. The court unsealed the complaint. Local 98 filed an amended complaint on February 3, 2012.[7]

In its amended complaint, Local 98 again alleged Farfield intentionally and knowingly misclassified workers performing electrician's work to gain a competitive bidding advantage on

3

the same federally funded construction project between 2001 and 2009.[8] Local 98 alleged Farfield submitted fraudulent certified payroll records intending those documents to be material in the federal government's decision to pay the false claims violating Section 3729(a)(1)(B) of the False Claims Act.[9]

The Clerk of Court assigned this matter to us in late September 2018. We set the parties' pre-trial obligations and a trial date.[10] Farfield moved for summary judgment arguing Local 98's theories of misclassification, liability, and damages are disproved by their own witnesses and evidence; Farfield did not submit a record or statement "to get" a claim paid by the federal government required under the pre-amended False Claims Act; Farfield did not knowingly submit a false claim; and, some of Local 98's claims are barred by the statute of limitations.

Local 98 responded fact issues precluded summary judgment. Local 98 alleged Farfield misclassified forty-two groundmen or laborers who performed electrical work which only could have been performed by journeyman and who should have been paid at the journeyman rate. Of the forty-two groundmen, Local 98 identified fourteen who worked on the Wayne Junction Project and who testified they performed electrical work.[11] Local 98 based its argument on "phase codes" used by Farfield on its time sheets to connote electrical work.[12] Using Farfield's time sheets with phase codes, Local 98 prepared a spreadsheet of all forty-two workers showing the total hours worked by all forty-two groundmen or laborers on "electrical" tasks. Local 98 developed three damages theories based on its spreadsheet. Farfield argues its phase codes are records for internal cost accounting purposes and are not detailed entries of specific work performed.[13] This is a credibility question.

At oral argument on Farfield's Motion for summary judgment, Local 98 explained it planned to prove damages through the fourteen identified groundmen or laborers as a

4

representative sample of the forty-two groundmen and laborers under the Supreme Court's decision in *Anderson v. Mt. Clemens Pottery Company*.[14] Local 98 argues the time sheets produced by Farfield either accurately describe the work the groundmen and laborers performed proving misclassification or, if the time sheets do not accurately describe the work performed, no accurate records exists and the burden shifts to Farfield under *Mt. Clemens* to show the "precise amount of work performed or with evidence to negative [sic] the reasonableness of the inference to be drawn from the employee's evidence."[15]

After oral argument, we denied Farfield's motion finding a claim under the False Claims Act may be predicated on an alleged violation of the Davis-Bacon Act; the False Claims Act as amended by the Fraud Enforcement Recovery Act of 2009 applies to Local 98's claims; the False Claims Act's statute of limitations does not bar Local 98's claims; and, fact issues on Local 98's misclassification theory precludes summary judgment.[16]

We directed the parties to evaluate the appointment of a Special Master under Federal Rule of Civil Procedure 53.[17] The parties consented to the appointment of Bruce P. Merenstein, Esquire who earlier served as a Special Master to resolve discovery issues.[18] After our pre-trial conference with counsel, we appointed Special Master Merenstein to hear evidence and prepare findings of fact and conclusions of law.[19] We ordered the parties to file memoranda addressing the burden of proof as to Local 98's damages and the retention of Farfield's time records raised as issues in the parties' pre-trial memoranda.[20]

The parties began four days of hearing on October 2, 2019 and will resume hearings on October 18, 2019, anticipating another three or four days to present all evidence. After the close of evidence, the parties will submit proposed findings of fact and conclusions of law to Special

Master Merenstein who, under our Order, will file his findings of fact and conclusions of law by November 15, 2019.[21]

## II. Analysis

We must examine the parties' burdens of proof under the False Claims Act and the Davis-Bacon Act. Local 98 argues we should apply the burden shifting paradigm of *Mt. Clemens* in a Fair Labor Standards Act case to prove damages under the False Claims Act. We begin by examining the relevant statutes.

### A. The False Claims Act.

Local 98 alleges Farfield violated the False Claims Act, 31 U.S.C. § 3729(a)(1)(B). Congress, through the False Claims Act, imposes liability on "any person who – knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim."[22] The terms "knowing" and "knowingly" means "a person with respect to information – (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information; ..."[23]

Under Section 3729 of the False Claims Act, a person who "knowingly presents ... a false or fraudulent claim for payment of approval" is liable to the United States "for a civil penalty of not less than $5,000 and not more than $10,000 ... plus 3 times the amount of damages which the Government sustains because of the act of that person."[24]

Local 98 concedes it bears the burden of proof under the False Claims Act.[25] It contends there is no need for "a pretrial ruling on this issue other than to recognize that [it] bears the burden of proof on proving Farfield's reckless disregard in submitting false certified payrolls."[26]

6

**B. The Davis-Bacon Act.**

Congress, through the Davis-Bacon Act and its regulations, impose recordkeeping requirements on employees like Farfield. Congress's Act empowers the Secretary of Labor to "prescribe reasonable regulations for contractors and subcontractors engaged in constructing, carrying out, completing, or repairing public buildings, public works, or buildings or works that at least partly are financed by a loan or grant from the Federal Government. The regulations shall include a provision that each contractor and subcontractor each week must furnish a statement on the wages paid each employee during the prior week."[27]

The Secretary of Labor's regulations require, *inter alia*, in any contract exceeding $2,000 "financed in whole or in part from Federal funds," the contractor must maintain:

- "payrolls and basic records ... for a period of three years ... for all laborers and mechanics working at the site of the work ...."; and

- "name, address, and social security number of each such worker, his or her correct classification, hourly rates of wages paid ... daily and weekly number of hours worked, deductions made and actual wages paid." [28]

The regulations require the contractor "shall submit weekly for each week in which any contract work is performed a copy of all payrolls" to the appropriate federal agency, if it is a party to the contract, or the "applicant, sponsor, or owner, as the case may be, for transmission to the" federal agency.[29] The submitted payrolls must "set out accurately and completely all the information required" by § 5.5(a)(3)(i). Farfield's contract with SEPTA incorporates the Davis-Bacon requirements,[30] and includes the regulation's language providing "[t]he falsification of any of the above certifications" including payrolls and basic records, "may subject [Farfield] ... to civil or criminal prosecution under 18 U.S.C. § 1001 and 31 U.S.C. § 231."[31] Congress amended and recodified 31 U.S.C. § 231 of the False Claims Act at 31 U.S.C. § 3729.

7

Local 98's False Claims Act theory is based on its allegation Farfield paid forty-two groundmen who performed electrical work at a lower rate for unskilled work in violation of its contract with SEPTA requiring compliance with the Davis-Bacon Act. Local 98 alleges Farfield's misclassification of the forty-two groundmen violated the Davis-Bacon Act and, when it provided weekly certified payrolls to SEPTA based on misclassification, it recklessly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim in violation of the False Claims Act. A false certification regarding payment of the prevailing wage rate required by the Davis-Bacon At may be rise to liability under the False Claims Act.[32]

### C. Farfield's time sheet phase codes.

Farfield produced time sheets for its employees who worked on the Wayne Junction Project. Farfield tracked its employees' work time by using "phase codes" on the timesheets.[33] Local 98 contends there are twelve Farfield phase codes connoting electrical work.[34]

Local 98 prepared a spreadsheet listing forty-two Farfield employees who worked on the Wayne Junction Project from 2002-2007 compiled from phase code time sheets, handwritten time sheets, certified payrolls, and daily foreman reports.[35] The spreadsheet lists the names of the forty-two employees, breaking their work time down by phase code. Farfield denies its phase codes evidence electrical work. Instead, it explains it used phase codes for internal cost accounting.[36]

Local 98 contends the phase code timesheets are the only documents produced by Farfield identifying or describing the work performed by employees on the Wayne Junction Project.[37] Farfield disputes this, asserting it produced "thousands of documents that would reflect work performed, including photographs showing specific employees performing work, as well as daily reports."[38]

Local 98 contends under Davis-Bacon Act regulation, Farfield is required to maintain "accurate records of hours worked (on a daily basis) at each [Davis-Bacon Act] classification (e.g., on a particular day, an employee performed five hours of journeyman lineman work and three hours of labor work) and wages paid."[39]

### D. *Mt. Clemens* burden shifting and representative evidence.

Local 98 argues *Mt. Clemens* burden shifting applies to its burden of proving the amount of damages and it may meet its burden of proof by using representative evidence; the testimony of fourteen of the forty-two groundmen and laborers it contends Farfield misclassified.

#### *Burden shifting under Mt. Clemens.*

In *Mt. Clemens*, seven employees and their local union, on behalf of themselves and similarly situated employees, brought a claim under the Fair Labor Standards Act. The employees alleged their employer deprived them of overtime by failing to properly calculate walking time to and from their workstations.[40] The Supreme Court articulated a burden shifting analysis in Fair Labor Standards Act claims: "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative [sic] the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate."[41] Recognizing the remedial nature of the Fair Labor Standards Act, the Supreme Court held the burden of proving a claim under the Act should not be put on the employee where the employer's records are "inaccurate or inadequate" in violation of its statutory obligation to maintain proper records.[42]

9

Although *Mt. Clemens* arose in a Fair Labor Standards Act case, its burden shifting applies to Davis-Bacon Act claims, including an award of back wages to non-testifying employees based on representative testimony of only some employees.[43]

### *Mt. Clemens allows representative evidence to fill an evidentiary gap created by an employer's failure to keep adequate records.*

The Supreme Court in *Mt. Clemens* allowed the testimony of seven employees as to the time they spent walking from time clocks to their work stations as the basis of the damage calculation for over 300 employees in the Fair Labor Standards Act collective action.[44] *Mt. Clemens* is widely cited as authority to allow "representative employees to prove violations with respect to all employees."[45]

Relying on *Mt. Clemens*, the Supreme Court in *Tyson Foods, Inc. v. Bouaphakeo* upheld the use of representative evidence.[46] In *Tyson*, the employees alleged they did not receive overtime pay for the time spent donning and doffing protective equipment. But the employer, Tyson, failed to keep records of donning and doffing time. Employees "were forced to rely on .... 'representative evidence'" including employee testimony, video recordings of donning and doffing at the work site, and a study by an industrial relations expert who reviewed video and analyzed the time taken to don and doff the protective gear.[47]

While Tyson did not keep records for time spent donning and doffing, it had information on the employees' "gang time"—the time employees spent at their workstations—and "K-code time" representing four minutes each day Tyson estimated employees needed to don and doff protective gear.[48] Tyson used this data to estimate the amount of uncompensated time and concluded some employees did not meet a forty-hour work week to qualify for overtime while others had potentially uncompensated overtime. Tyson argued the varying amounts of time to don and doff made the action too speculative for class wide discovery.

After a jury verdict in favor of the employees, Tyson appealed. The United States Court of Appeals for the Eighth Circuit affirmed the verdict recognizing "a verdict for the employees 'require[d] inference' from their representative proof" and held "this inference is allowable under [*Mt. Clemens*]."[49] The court of appeals rejected Tyson's challenge to the sufficiency of the evidence holding "under the facts of this case, the jury could have drawn a 'reasonable inference of class-wide liability.'"[50]

The Supreme Court affirmed the court of appeals. The Court rejected Tyson's argument for a broad rule against the use in class actions of "representative evidence," finding "[a] categorial exclusion [of representative evidence] … would make little sense. A representative or statistical sample, like all evidence, is a means to establish or defend against liability. Its permissibility turns not on the form a proceeding takes—be it a class or individual action—but on the degree to which the evidence is reliable in proving or disproving the elements of the relevant cause of action."[51]

The Court reasoned whether and when to use statistical evidence to establish class wide liability "depends on the purpose for which the evidence is being introduced and on 'the elements of the underlying cause of action'"; a representative sample is, in many cases, "the only practicable means to collect and present relevant data"; and, relying on *Mt. Clemens*, found permissible the use of a representative sample "to fill an evidentiary gap created by the employer's failure to keep adequate records."[52]

### E. Application of *Mt. Clemens* to Local 98's proof.

Local 98 argues the application of *Mt. Clemens* burden shifting depends on the evidentiary determinations made by Special Master Merenstein. Local 98 argues *Mt. Clemens* will **not** apply if Special Master Merenstein (1) finds Farfield did not knowingly submit a false claim based on misclassification of groundmen and laborers; or (2) finds Farfield knowingly submitted a false

11

claim based on misclassification of its workers and its phase codes accurately describe the extent of misclassified electrical work, that is, all hours of work assigned to an electrical phase code equates to journeyman electrical work. In the first scenario, there is no liability and thus no damages. In the second scenario, there is liability and Special Master Merenstein finds, based on the evidence, the phase codes accurately describe the work performed by groundmen as electrical work requiring wages to be paid at the higher journeyman rate.

The only scenario in which *Mt. Clemens* applies, according to Local 98, is if Special Master Merenstein finds liability under the False Claims Act and Farfield argues *some* hours worked by groundmen and laborers under the phase codes are not attributable to journeyman electrical work. Local 98 expects Farfield to "continue to argue that its phase codes do not accurately describe the work performed"[53] and argues the Special Master must then apply *Mt. Clemens* burden shifting because Farfield cannot meet its burden to "come forward with evidence of the precise amount of work performed or with evidence to negative [sic] the reasonableness of the inference to be drawn from the employee's evidence." Local 98 argues there are no documents beyond the phase code time sheets. Because Farfield cannot meet its burden under *Mt. Clemens*, Local 98 argues Farfield is responsible for damages based on *all* hours worked by groundmen and laborers on electrical phase codes reflected on the timesheets. Local 98 contends it is premature for us to decide the applicability of *Mt. Clemens* because Special Master Merenstein has not made evidentiary determinations.

In response, Farfield argues *Mt. Clemens* does not apply because (1) the burden of proof of damages should not to shift to it in a False Claims Act case; (2) the burden of proof on damages for failure to keep records cannot shift to Farfield when the Davis-Bacon Act only required it to retain payroll records for three years; (3) the burden of proof on damages for failure to provide

12

records based on Fair Labor Standards Act cases cannot shift to Farfield when the Fair Labor Standards Act only requires a defendant to retain records for two or three years; (4) Farfield did not have timely notice of any payroll records issue under the Davis-Bacon Act and the burden cannot shift to it; and (5) even if the burden shifted to Farfield under *Mt. Clemens*, Local 98 must still present evidence of the amount and extent of work for shift the burden of proof on damages.[54]

As detailed in our Order denying Farfield's motion *in limine* on this issue and our Order appointing the Special Master, we expect the Special Master will make the credibility and fact determinations. We also expect he will file conclusions of law including as to damages. We are not allowing a two-step process. The Special Master will decide the damages. The legal question for us is whether, should he reach the issue, he may apply the *Mt. Clemens* burden shifting based on the adduced credible evidence.

We reject each of Farfield's arguments. Farfield first argues *Mt. Clemens* burden shifting on damages should not apply in a False Claims Act case, and it found no case doing so. Our research found no case applying *Mt. Clemens* burden shifting on damages in a False Claims Act case. But we do not find this dispositive of the issue under the circumstances of this case.

Farfield's contract with SEPTA includes the Davis-Bacon Act recordkeeping regulations under 29 C.F.R. § 5.5(a)(3)(i) including the "correct classification, hourly rates of wages paid ... daily and weekly number of hours worked, deductions made and actual wages paid" for the forty-two groundmen and laborers. The contract requires Farfield to "submit weekly, for each week in which any contract work is performed, a copy of all payrolls to SEPTA for transmission to the [Federal Transit Administration] and "shall set out accurately and completely all of the information required to be maintained under 29 CFR 5.5(a)(3)(i)." Farfield's contract with SEPTA includes a provision warning "falsification of any of the above certifications may subject the Contractor ...

13

to civil or criminal prosecution under .... [the False Claims Act]."[55] The contract's language contemplates the parties' intent for Farfield to maintain Davis-Bacon Act compliant records and, based on compliant records, submit certifications to SEPTA for transmission to the Federal Transit Administration the falsity of which may be subject to the False Claims Act. The contract cuts against Farfield's argument *Mt. Clemens* burden shifting under the Davis-Bacon Act should not apply to the False Claims Act.

We are not persuaded by Farfield's argument *Mt. Clemens* burden shifting should not apply because the Davis-Bacon Act does not require it to retain records after three years and its similar argument the record retention requirement is consistent with the Act's statute of limitations. While it is true Section 5.5(a)(3) requires a contractor to maintain the required records for a period of three years after work is complete, Farfield does not tell us what records it maintained but no longer possesses because of the three-year record retention rule. Farfield maintained phase code time sheets it produced in discovery from which Local 98 prepared the spreadsheet for forty-two workers, but we have no idea what records Farfield may have once possessed which could refute, or otherwise explain, the phase codes, if at all. Farfield contends the Department of Labor's 2004 audit of the Wayne Junction Project did not flag a problem with Farfield's recordkeeping or classification of its groundmen and laborers, and, as a result, Farfield "did not modify either how it classified these employees, nor its recordkeeping."[56] Farfield argues it "would have maintained different pay and recordkeeping practices going forward, as well as assigning work differently as it had plenty of journeymen working on the Wayne Junction Project."[57] But this does not explain how the phase codes it used are inadequate to show the work its groundmen and laborers performed on the Wayne Junction Project. And although it concedes it is required to record classifications, it argues "[i]f employees do not work in more than one classification during a day, there is no

14

requirement that the employer keep track of the minutes and hours an employee is performing each specific task."[58] But if we accepted this argument, an employer could simply assign one classification while its employees performed work in another classification(s), intentionally misclassifying employees with no recourse.

Farfield alternatively argues even if *Mt. Clemens* burden shifting applies, Local 98 must still present evidence to shift the burden of proof on damages. There is no dispute under *Mt. Clemens* Local 98 meets its burden to prove a violation of the Davis-Bacon Act if it proves the groundmen and laborers "in fact performed work for which [the groundmen and laborers] improperly compensated and if it produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."[59] Local 98 plans to meet its burden through its spreadsheet collecting data from the phase code timesheets. But this does not alleviate Farfield's burden of coming "forward with evidence of the precise amount of work performed or with evidence to negative [sic] the reasonableness of the inference to be drawn from the employee's evidence."[60] Local 98 points to the phase code timesheets and its local industry trade practice witness to argue twelve of the phase codes connote electrical work. Farfield disputes the phase codes connote electrical work and point to other evidence such as photographs of the work groundmen and laborers performed and daily logs.

The parties present a classic question of credibility. Special Master Merenstein must assess the evidence and determine whether a party met its burden. If he finds Local 98 meets its burden based on the phase code timesheets and related evidence, and Farfield fails to meet its burden based on its evidence the phase codes do not show misclassification, then the Special Master may apply *Mt. Clemens* principles to evaluate an award of damages to Local 98 "even though the result be only approximate."[61]

15

---

[1] *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946).

[2] Unless otherwise noted, we take the facts from our Memorandum denying Farfield's Motion for summary judgment (ECF Doc. No. 192).

[3] 40 U.S.C. § 3142 (formerly 40 U.S.C. § 276a). ECF Doc. No. 182-7 at 24a, § R; 44a-45a at § 7.c.(1), (2).

[4] ECF Doc. No. 182-7 at 45a, § 7.c.(2)(b).

[5] *Id.* at § 7.c.(2)(d).

[6] 40 U.S.C. § 3142 (formerly 40 U.S.C. § 276a).

[7] ECF Doc. Nos. 16, 17, 30.

[8] ECF Doc. No. 30 at ¶¶ 2-9.

[9] *Id.* at ¶ 40.

[10] ECF Doc. No. 171.

[11] ECF Doc. No. 184 at ¶¶ 195-208; 212.

[12] ECF Doc. No. 184 at ¶ 211.

[13] ECF Doc. No. 185 at 8 (we use the pagination assigned by the CM/ECF docketing system).

[14] 328 U.S. 680 (1946).

[15] *Id.* at 687-88.

[16] ECF Doc. No. 192.

[17] ECF Doc. No. 194.

[18] ECF Doc. Nos. 195, 200.

[19] ECF Doc. No. 199.

[20] ECF Doc. No. 203.

[21] ECF Doc. No. 199.

[22] 31 U.S.C. § 3729(a)(1)(B).

[23] *Id.* at § 3729(b)(1)(A).

[24] *Id.* at § 3729(a)(1).

[25] ECF Doc. No. 204 at 2.

[26] *Id.*

[27] 40 U.S.C. § 3145(a).

[28] 29 C.F.R. § 5.5(a)(3)(i).

[29] *Id.* at § 5.5(a)(3)(ii)(A).

[30] ECF Doc. No. 182-7 at 44a-46a.

[31] *Id.* at 45a.

[32] *United States ex rel. Wall v. Circle C Const., LLC*, 697 F.3d 345, 353 (6th Cir. 2012); *United States ex rel. Plumbers and Steamfitters Local Union No. 38, v. C.W. Roen Const. Co.*, 183 F.3d 1008, 1091-92 (9th Cir. 1999); *Found. for Fair Contracting, Ltd. v. G & M Eastern Contracting & Double E, LLC*, 259 F.Supp.2d 329, 339 (D.N.J. 2003) (footnote omitted).

[33] ECF Doc. No. 184 at ¶ 210; ECF Doc. No. 188 at ¶ 210.

[34] ECF Doc. No. 184 at ¶ 211.

[35] ECF Doc. No. 182-2 at ¶ 54; ECF Doc. No. 184 at ¶ 54. There is no dispute a paralegal from Local 98's counsel prepared the spreadsheet. *See* ECF Doc. No. 184-6 at 665 (we use the pagination assigned by the CM/ECF docketing system).

[36] ECF Doc. No. 182-2 at ¶ 100.

[37] ECF Doc. No. 184 at ¶ 281.

[38] ECF Doc. No. 188 at ¶ 281.

[39] ECF Doc. No. 204 at 2-3.

[40] *Mt. Clemens*, 328 U.S. at 684.

[41] *Id.* at 687-88.

⁴² *Id.* at 687.

⁴³ *In the Matter of Pythagoras Gen. Contracting Corp. v. Adm'r, Wage and Hour Div., United States Dep't of Labor*, 2011 WL 729638, * 1 (DOL Admin. Review Bd. Feb. 10, 2011); *In the Matter of Pythagoras Gen. Contracting Corp. v. Adm'r, Wage and Hour Div., United States Dep't of Labor*, 2011 WL 1247202, *2, *6 (DOL Admin. Review Bd. Mar. 1, 2011), *aff'd*, 926 F. Supp. 2d 490 (S.D.N.Y. 2013).

⁴⁴ *Id.* at 684-86, 690-91.

⁴⁵ *Reich v. Gateway Press, Inc.*, 13 F.3d 685, 701 (3d Cir. 1994) (citing *Mt. Clemens*, 328 U.S. at 680 and collecting cases).

⁴⁶ --- U.S. ---, 136 S.Ct. 1036, 1046-47, 194 L.Ed.2d 124 (2016).

⁴⁷ *Id.* at 1043.

⁴⁸ *Id.*

⁴⁹ *Id.* at 1044-45.

⁵⁰ *Id.* at 1045.

⁵¹ *Id.* at 1046 (citing Fed. Rules Evid. 401, 403, 702).

⁵² *Id.* at 1046-47.

⁵³ ECF Doc. No. 204 at 7.

⁵⁴ ECF Doc. No. 206.

⁵⁵ ECF Doc. No. 182-7 at 45a, § (2)(d).

⁵⁶ EF Doc. No. 206 at 6 (we use the pagination assigned to the CM/ECF docketing system).

⁵⁷ *Id.*

⁵⁸ *Id.*

⁵⁹ *Mt. Clemens*, 328 U.S. at 687.

⁶⁰ *Id.*

⁶¹ *Id.* at 687-88.